No. 91-564

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,

      Plaintiff and Appellant,

  v.

ALLSTATE INSURANCE COMPANY
and GARY GLASSING,

      Defendants and Respondents.

FILED

FEB 19 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Gary M. Zadick, Mark F. Higgins, Ugrin, Alexander,
           Zadick & Slovak, Great Falls, Montana

      For Respondents:

           Susan P. Roy, Garlington, Lohn and Robinson,
           Missoula, Montana

Submitted:  May 12, 1992

Decided:  February 19, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff St. Paul Fire and Marine Insurance Company filed its complaint in the District Court for the Eighth Judicial District in Cascade County to recover amounts paid to its insured pursuant to the underinsured motorist coverage provided by its policy. St. Paul's claim against defendant Gary Glassing was dismissed by the District Court based on that court's conclusion that it lacked personal jurisdiction over Glassing. St. Paul's claim against Allstate Insurance Company was dismissed because of its failure to state an actionable claim against Allstate. From this judgment, St. Paul appeals. We reverse in part and affirm in part.

The issues are:

1. Did the District Court have personal jurisdiction over Gary Glassing pursuant to Rule 4B(1)(b), M.R.Civ.P.?

2. Is an insurer which provides underinsured motorist coverage a third party entitled to bring a direct claim under §§ 33-18-201 and -242, MCA, when a primary insurer fails to effectuate prompt and reasonable settlement?

## FACTUAL BACKGROUND

St. Paul's insured, Ellen Lynn, and Glassing were involved in a motor vehicle collision in Bozeman on June 12, 1985. A personal injury action was filed by Lynn against Glassing in Gallatin County District Court, and on November 17, 1989, judgment was entered in favor of Lynn in the net amount of $95,377.92.

At the time of the underlying motor vehicle collision, St. Paul insured Lynn with a policy which provided coverage in the

2

event that Lynn was injured by an underinsured motorist. At the same time, Allstate insured Glassing against liability resulting from the operation of his motor vehicle. However, the limit of Glassing's liability coverage was $50,000.

In the complaint which gave rise to this action, St. Paul alleged that pursuant to its policy of insurance with Lynn, it paid to her the amount of her judgment against Glassing that exceeded Allstate's policy limits. It alleged that the amount of that payment was $51,461.16. St. Paul also alleged two separate claims based upon its payment to Lynn.

In its first cause of action, St. Paul alleged that by virtue of its payment to its insured, it became subrogated both by law and by the terms of its policy with Lynn to her claim against Glassing to the extent of its payment. It sought recovery from Glassing in that amount.

In its second cause of action, St. Paul alleged that on several occasions prior to entry of judgment in favor of Lynn, Allstate refused to settle her claim against Glassing by payment of its policy limits to her. St. Paul alleged that by refusal to pay the policy limits before judgment was entered against Glassing for a greater amount, Allstate breached its obligation to its own insured and to St. Paul, and that as a result, St. Paul was required to pay $51,461.16 to its insured. It sought recovery of that amount, plus interest, from Glassing and from Allstate.

Although the record is vague regarding dates and specific procedures, it appears that prior to the time this claim was filed

3

in State District Court, a similar or identical claim was filed in the United States District Court for the District of Montana. Before that claim was removed to the State District Court, the Federal District Court dismissed St. Paul's claim against Allstate for the reason that it did not state a claim for which relief could be granted. The parties subsequently stipulated in this case that the prior ruling by the Federal District Court would be the law of the case for purposes of the State Court proceeding, and that dismissal of that case could be appealed to the Montana Supreme Court when final judgment was entered in the State District Court.

After being served with the State Court complaint, Glassing moved to dismiss the claim against him for the reason that the District Court lacked personal jurisdiction over him. In support of that motion, Glassing submitted an affidavit in which he stated that he moved to Minnesota on July 1, 1990, had been working and living there since, and had no plans to return to Montana.

On October 10, 1991, the District Court entered its order granting the motion to dismiss Glassing based on lack of personal jurisdiction. The court noted that Glassing moved from Montana to Minnesota on about July 1, 1990, after graduating from Montana State University and that this action was not filed until June 17, 1991. The court concluded that St. Paul's subrogation claim against Glassing arose from the terms of its insurance contract with Lynn and that the claim was not based on any act of the defendant which occurred in Montana. Therefore, the District Court concluded that since the defendant could not be found in Montana

4

for the purpose of establishing general jurisdiction, and did not come within any of the subsections of Rule 4B(1), M.R.Civ.P., there was no basis for asserting personal jurisdiction over him.

St. Paul appeals the dismissal of Glassing in the State District Court and the dismissal of Allstate by the Federal District Court, which by stipulation became part of the final judgment entered in the State District Court.

I

Did the District Court have personal jurisdiction over Gary Glassing pursuant to Rule 4B(1)(b), M.R.Civ.P.?

On appeal, St. Paul contends that Montana courts have personal jurisdiction over Glassing pursuant to the Montana long-arm statute found in Rule 4B(1)(b), M.R.Civ.P., since its claim is based upon the defendant's tortious conduct committed within this state.

Glassing denies that this state has personal jurisdiction over him for two reasons. First, he contends that St. Paul's suit is not based on his tortious conduct, but is based upon a contractual relationship between St. Paul and its insured which permitted St. Paul to pursue a claim for subrogation. Second, Glassing contends that even if his conduct comes within Montana's long-arm statute, it is unreasonable for this state's courts to exercise jurisdiction over him, and plaintiff's claim should be dismissed pursuant to our decision in *Simmons v. State* (1983), 206 Mont. 264, 670 P.2d 1372.

We conclude that St. Paul's claim against Glassing is based solely upon defendant's commission of acts within the State of Montana which resulted in the accrual of a tort action. While the

5

defendant is correct that St. Paul has a contractual agreement with its insured allowing it to pursue subrogation, the contractual authorization is neither necessary nor the basis for St. Paul's suit against Glassing.

We have previously held that:

> Subrogation is a device of equity which is designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it. *Bower v. Tebbs*, 132 Mont. 146, 314 P.2d 731. . . . The theory behind this principle is that absent repayment of the insurer the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, <u>or in absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with [the] loss</u>. [Emphasis added.]

*Skauge v. Mountain States Tel. & Tel. Co.* (1977), 172 Mont. 521, 524-25, 565 P.2d 628, 630.

We have also held that a right to subrogation, such as the one exercised by the plaintiff in this case, is not dependent on the terms of a contract.

> Subrogation in a legal sense arises upon the fact of payment by the insurer, rather than by contract between the parties. *Skauge*, 565 P.2d at 630. It is the substitution of another person in place of the creditor, so that the person substituted will succeed to the rights of the creditor in relation to the debt or claim. *Skauge*, 565 P.2d at 630.

*McDonald v. Grassle* (1987), 228 Mont. 25, 29, 740 P.2d 1122, 1125.

In this case, St. Paul became substituted for its insured as a matter of law when it paid Ellen Lynn pursuant to its insurance policy with her and is entitled to pursue her right to collect the amount of her judgment against the defendant. However, St. Paul's

6

right to subrogation arises from the judgment entered in favor of its insured against the defendant, and that judgment is a result of the defendant's tortious conduct within the State of Montana.

Since the allegations in Count I of St. Paul's complaint are based upon Glassing's tortious conduct committed within the State of Montana, we hold that Rule 4B(1)(b), M.R.Civ.P., permits the exercise of personal jurisdiction over Glassing by the District Court for the conduct complained of in the plaintiff's complaint.

In *Simmons*, we held that where a nonresident defendant is not "present" within the state for purposes of establishing general jurisdiction, each of the following criteria must be met before personal jurisdiction can be exercised without violating due process:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Simmons*, 670 P.2d at 1378.

It is clear that the first two criteria are satisfied. Glassing committed a tort within Montana and St. Paul's claim results from that tort.

We have held that the following factors should be considered to determine whether the exercise of personal jurisdiction is reasonable:

7

1. The extent of defendant's purposeful interjection into Montana;

2. The burden on defendant of defending in Montana;

3. The extent of conflict with the sovereignty of defendant's state;

4. Montana's interest in adjudicating the dispute;

5. The most efficient resolution of the controversy;

6. The importance of Montana to plaintiff's interest in convenient and effective relief; and

7. The existence of an alternative forum.

*Jackson v. Kroll, Pomerantz and Cameron* (1986), 223 Mont. 161, 166, 724 P.2d 717, 721. *See Taubler v. Giraud* (9th Cir. 1981), 655 F.2d 991, 994; *Simmons*, 670 P.2d at 1383-85.

We conclude that it is reasonable to exercise personal jurisdiction over Glassing under the circumstances present in this case for several reasons: There is no conflict with Glassing's current state of residence; Montana has a strong interest in adjudicating liability based upon the operation of motor vehicles on its roadways; and the most efficient and convenient forum within which to resolve the issues raised by the plaintiff's pleadings is the State of Montana where the witnesses to the underlying tort are most likely located and where the judgment in the underlying action has been entered.

For these reasons, we conclude that Montana's long-arm statute provides a basis for exercising personal jurisdiction over Glassing and that the exercise of personal jurisdiction under the circumstances in this case is reasonable. The District Court's

8

judgment dismissing plaintiff's complaint against Glassing based on lack of personal jurisdiction is, therefore, reversed.

## II

Is an insurer which provides underinsured motorist coverage a third party entitled to bring a direct claim under §§ 33-18-201 and -242, MCA, when a primary insurer fails to effectuate prompt and reasonable settlement?

St. Paul next contends that its insured, Ellen Lynn, had a third-party claim against Allstate pursuant to §§ 33-18-201 and -242, MCA, because of Allstate's repeated refusal to settle her claim for its policy limits prior to a jury trial and a verdict in her favor. St. Paul contends that just as it is subrogated by law to Lynn's claim against Glassing, it is an equitable subrogee of Lynn with regard to her statutory third-party claim against Allstate.

In support of its argument, St. Paul cites this Court to numerous opinions from other jurisdictions which have held that where a primary insurance carrier negligently and in bad faith fails to settle a claim against its insured within the insured's primary policy limits, and a judgment is then entered against its insured for an amount greater than the policy limit so that the insured's excess liability carrier becomes responsible for payment of the excess amount, the excess carrier is equitably subrogated to the rights of the insured and entitled to maintain an action for bad faith against the primary carrier. *See Continental Casualty Co. v.*

9

*Reserve Ins. Co.* (Minn. 1976), 238 N.W.2d 862; *Valentine v. Aetna Ins. Co.* (9th Cir. 1977), 564 F.2d 292; *Centennial Ins. Co. v. Liberty Mutual Ins. Co.* (Ohio 1980), 404 N.E.2d 759.

St. Paul contends that even though it is not an excess liability carrier, the issue is the same, the public policy is the same, and this Court should, therefore, allow equitable subrogation for an underinsurance carrier under the circumstances in this case.

There is merit to St. Paul's argument, and under other circumstances, this Court would consider St. Paul's argument. However, determinative of our holding in this case is the fact that even in the cases relied upon by St. Paul the primary insurer had no independent duty to the excess insurer. The courts which have allowed excess carriers to sue primary carriers for unreasonable refusal to settle claims have allowed them to do so by holding that the excess insurer is equitably subrogated to the rights of the insured against the primary insurer. *See* Windt, Insurance Claims and Disputes at 411 & n. 92 (2d ed. 1988). Therefore, even if we were to allow equitable subrogation for an underinsurance carrier against a primary carrier who unreasonably refused to settle a claim within policy limits and thereby exposed the underinsurance carrier to liability for the excess amount of the judgment, the underinsurance carrier has no greater rights than can be asserted by its insured. As we held in *McDonald*, subrogation is:

> [T]he substitution of another person in place of the creditor, so that the person substituted will succeed to the rights of the creditor in relation to the debt or claim.

10

*McDonald*, 740 P.2d at 1125.

Pursuant to Rule 202(b)(6), M.R.Evid., we take judicial notice that Lynn sued Allstate for unreasonable refusal to settle her claim against its insured in Cause No. CV-91-11-BU-PGH in the United States District Court for the District of Montana in the Butte Division. Although the particulars of that claim are unknown to this Court, the claim was resolved by stipulation between the parties and Lynn's claim against Allstate was dismissed with prejudice on July 29, 1991. Pursuant to that dismissal, Lynn has no further claim against Allstate, and therefore, there is no claim to which St. Paul can be equitably subrogated.

Even though Lynn's claim against Allstate had not been dismissed with prejudice at the time the Federal District Court dismissed St. Paul's claim against Allstate, nor at the time St. Paul subsequently refiled its claim against Allstate in the State District Court, Lynn's subsequent stipulation renders St. Paul's appeal moot.

There is no indication that St. Paul's claim against Allstate is based upon an assignment of any first-party claim that Glassing might have pursuant to *Gibson v. Western Fire Insurance Company* (1984), 210 Mont. 267, 682 P.2d 725. Therefore, by this decision, we do not determine the merits of any such claim.

For these reasons, we affirm the judgment of the District Court dismissing St. Paul's claim against Allstate in Count II of the plaintiff's complaint. We reverse the District Court's

11

judgment dismissing Count I of the plaintiff's complaint and remand this case to the District Court for further proceedings consistent with this opinion.

_____
                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____

_____

_____
            Justices

12