NO.  93-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ALFRED YOUNGBLOOD and
MARY ANN YOUNGBLOOD,

     Plaintiffs and Appellants,

AMERICAN STATES INSURANCE
COMPANY, an Indiana Corporation,

     Defendant and Respondent.

FILED

DEC 14 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Thomas C. Honsel, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          John M. Morrison  (argued),  Morrison Law Office,
          Helena, Montana

       For Respondent:

          Stuart L. Kellner & Stephen M. Frankino (argued),
          Hughes, Kellner, Sullivan & Alke, Helena, Montana


                         Submitted:  November 4, 1993

                           Decided:  December 14, 1993

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Plaintiffs Alfred Youngblood (Alfred) and Mary Ann Youngblood (Mary Ann) appeal an order of the First Judicial District Court, Lewis and Clark County, denying their motion for summary judgment and granting Defendant's (American States) motion for summary judgment. We reverse.

The issues on appeal are as follows:

1. Is the choice of law provision in Alfred's insurance policy, which allows American States to subrogate pursuant to Oregon law, enforceable?

2. Does the subrogation clause at issue violate Montana's public policy?

American States issued an automobile liability insurance policy to Alfred in Oregon. The policy contained a personal injury protection (PIP) endorsement issued in Oregon, and required subrogation of medical pay benefits pursuant to Oregon law. Alfred is a resident of Oregon and Mary Ann is a resident of Washington.

On June 24, 1990, Mary Ann and her parents, Alfred and Vivienne Youngblood, were traveling in Montana. They were rear-ended by a Montana truck which was insured by National Farmers Union Standard Insurance Company (National). Mary Ann was injured and American States paid approximately $10,000 in PIP benefits to her health care providers to cover some of her medical expenses.

Thereafter, Mary Ann settled her claims with National for $85,229.50. Mary Ann paid one-third of that amount in attorney's fees, $1,000 in costs, and $5,437.50 to Union Life Insurance

2

Company (Mary Ann's health insurance company) in a compromise settlement of that company's subrogation claim. American States sought to recover, via subrogation, from Mary Ann the payments it made on her behalf under the PIP endorsement of the policy issued to Alfred. Mary Ann refused to remit these funds and, on May 4, 1992, Alfred and Mary Ann filed their complaint for declaratory relief, seeking a ruling that the place of performance of the American States' insurance policy was Montana, the state in which the accident occurred. Alfred and Mary Ann further requested a ruling that the medical payment subrogation provisions of Alfred's insurance policy were void as against public policy so that American States had no valid subrogation interest for the amounts paid under that insurance policy to Mary Ann.

All parties filed motions for summary judgment and, on March 25, 1993, the District Court issued its order denying Alfred's and Mary Ann's motion and granting American States' motion. In essence, the District Court held that a choice of law provision in the PIP endorsement was enforceable against Mary Ann and required application of Oregon law, which permitted medical pay subrogation. Prom that order, Alfred and Mary Ann appeal.

Our standard in reviewing a grant of summary judgment is the same as that initially utilized by the district court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P.

## I - CHOICE OF LAW PROVISION

The interpretation of an insurance contract in Montana is a question of law. Wellcome v. Rome Ins. Co. (1993), ___ Mont. ___, ___, 849 P.2d 190, 192. In general, unless the terms of the insurance contract provide otherwise, the law of the place of performance controls its legal construction and effect, while the law of the place where the contract is made governs on questions of execution and validity. Kemp v. Allstate Ins. Co. (1979), 183 Mont. 526, 533, 601 P.2d 20, 24; Section 28-3-102, MCA. Here, the general policy language in the insurance contract requires American States to pay whatever damages are required in Montana; that is, the contract is to be performed in Montana. Therefore, unless a contract term provides otherwise, Kemp and § 28-3-102, MCA, require the application of Montana law because the contract was to be "performed" in Montana. In this case, however, the insurance contract contains a choice of law provision which requires the application of Oregon subrogation law. In pertinent part, that provision provides as follows:

> Reimbursement and Trust Agreement. In the event of payment to any person of any benefits under this endorsement:
>
> (a) the Company shall be entitled to reimbursement or subrogation in accordance with the provisions of ORS 743.825, ORS 743.830, or Section 8 of Chapter 784 Laws, 1975; . . .

We have previously held that, if a contract's terms are clear and unambiguous, the contract language will be enforced. Keller v. Dooling (1991), 248 Mont. 535, 539, 813 P.2d 437, 440; Section 28-3-401, MCA. The only exception to enforcing an unambiguous

4

contract term is if that term violates public policy or is against good morals. Steinke v. Boeing Co. (D. Mont. 1981), 525 F.Supp. 234, 236. Here, the insurance contract clearly provides for subrogation pursuant to Oregon law, and expresses the intention of the parties to apply Oregon law no matter where the accident occurred or where the contract is to be performed. Therefore, the choice of law provision will be enforced unless enforcement of the contract provision requiring application of Oregon law as regards subrogation of medical payments violates Montana's public policy or is against good morals. We must, therefore, analyze whether the Oregon law subrogation provision violates Montana's public policy or is against good morals.

## II - VIOLATION OF PUBLIC POLICY

Mary Ann contends that the subrogation clause at issue is not enforceable in Montana because it violates public policy -- a rule which has been adopted and discussed in prior case law. We agree, although some further discussion and clarification of that case law is necessary.

Subrogation is an equitable doctrine which is not dependent on any contractual relationship between the parties and is not dependent on privity. Bower v. Tebbs (1957), 132 Mont. 146, 155, 314 P.2d 731, 736. The purpose of subrogation is to prevent injustice by "compel[ling] the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. It is an appropriate means of preventing unjust enrichment." Bower, 314 P.2d at 736.

5

Our past decisions have, on occasion, confused subrogation with assignment: however, there is an important legal distinction between the two concepts.

> Subrogation is the substitution of another person in the place of the creditor, so that the person substituted will succeed to the rights of the creditor in relation to the debt or claim, and is an act of the law growing out of the relation of the parties to the original contract of insurance, and the natural justice or equities arising from the fact that the insurer has paid the insured, rather than a right depending upon the contract. On the other hand, an assignment of a right or claim is the act of the parties to the assignment, dependent upon actual intention, and necessarily contemplating the continued existence of the debt or claim, the whole of which is assigned.
>
> . . .
>
> When there is an assignment of an entire claim there is a complete divestment of all rights from the assignor and a vesting of those same rights in the assignee. In the case of subrogation, however, only an equitable right passes to the subrogee and the legal title to the claim is never removed from the subrogor, but remains with him throughout.

Skauge v. Mountain States Tel. & Tel. Co. (1977), 172 Mont. 521, 526, 565 P.2d 628, 630-31.

Montana law has long held that a property damage claim is assignable, while a cause of action growing out of a personal right, such as a tort, is not assignable. Caledonia Ins. Co. v. Northern Pac. Ry. Co. (1905), 32 Mont. 46, 49, 79 P. 544, 545. Notwithstanding, and because we have, on occasion, blurred the distinction between subrogation and assignment, there has been some confusion between the _assignment_ of a personal injury claim and _subrosation_ of a personal injury claim. See Allstate Ins. Co. v. Reitler (1981), 192 Mont. 351, 628 P.2d 667.

6

With some exceptions, subrogation against an insured is allowed if that insured has been made whole and has been fully compensated, which compensation includes costs and attorney's fees. Skauae, 565 P.2d at 632. However, an insurance company is only allowed to subrogate to the amount it actually paid. Farmers Ins. Exchange v. Christenson (1984), 211Mont. 250, 254, 683 P.2d 1319, 1321.

At issue here is one of the exceptions under Montana law to the general rule allowing subrogation. We have previously refused to allow subrogation of medical payment benefits. In Reitler, Welton sustained personal injuries and incurred medical expenses after she was hit from behind by a vehicle driven by Reitler. Welton was insured by Allstate Insurance Company (Allstate), which paid her $2,000 in medical benefits. Allstate sent a notice of subrogation to Reitler's insurer, Farmers Insurance Exchange (Farmers). Thereafter, Welton settled her claim with Farmers for $9,500, and Farmers obtained a release from Welton. Allstate then filed an action against Farmers for the amount of its subrogated interest against Welton. Reitler, 628 P.2d at 668. We held that medical payment subrogation clauses are invalid, due in part to public policy considerations. Those public policy considerations included the following: (1) the insured has paid a premium for medical payment coverage; (2) the insured person is the one likely to suffer most if medical payments received must be repaid out of a third-party recovery; and (3) the tortfeasor's carrier may consider that the injured person has already been paid medical

7

expenses and can make a smaller offer which allows that such payment has already been made. Reitler, 628 P.2d at 670.

Unfortunately, we also reasoned that a subrogation clause has the effect of assisning a part of the insured's right to recover against a third party tortfeasor and, the assignment of a personal injury claim being prohibited, we held that medical payment subrogation clauses in insurance contracts were invalid. Reitler, 628 P.2d at 670. The result reached in Reitler was correct, not because there was a prohibited assignment of a personal injury claim, but because of the public policy reasons expressed therein as outlined above, and because Allstate's right to reimbursement via subrogation was dependent upon the ability of the indemnified party to sue the tortfeasor. Welton, however, had already settled, thus precluding suit by Allstate.

The latter conclusion is clear from our holding in St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co. (1993), ___ Mont. ___, 847 P.2d 705. In St. Paul, Lynn, insured by St. Paul Fire and Marine Insurance Company (St. Paul), and Glassing, insured by Allstate Insurance Company (Allstate), were involved in a motor vehicle accident. Allstate refused to settle Lynn's complaint, and Lynn succeeded in obtaining a jury verdict in her favor against Glassing. St. Paul, 847 P.2d at 705-06. Lynn also filed an action in federal court against Allstate for unreasonable refusal to settle her claim. That claim was resolved by stipulation between the parties and Lynn's claim against Allstate was dismissed with prejudice. St. Paul, 847 P.2d at 709. During these legal

proceedings between Lynn and Allstate, St. Paul filed a complaint against Allstate and Glassing to recover amounts paid to Lynn pursuant to an underinsured coverage policy. St. Paul, 847 P.2d at 707. St. Paul's complaint against Allstate was eventually dismissed because of its failure to state an actionable claim. Because Lynn's claim against Allstate had been dismissed with prejudice, Lynn had no further claim against Allstate, and, thus, there was no claim against which St. Paul could subrogate. Under the doctrine of subrogation, St. Paul "stepped into the shoes" of Lynn. St. Paul had no independent right to sue Allstate under a subrogation theory once Lynn settled. St. Paul, 847 P.2d at 709. We further held that St. Paul did have a cause of action against Glassing, as Lynn had not stipulated or settled with him. St. Paul, 847 P.2d at 709.

The holding of Reitler was further developed and discussed in Christenson. In that case, Christenson, an uninsured motorist, caused an accident and his passenger, Hinckley, was injured. Farmers Insurance Exchange (Farmers) insured Hinckley and paid $7,000 on her claim under an uninsured motorist provision. As required by the policy, Hinckley assigned her personal injury action to Farmers as part of a subrogation clause. Farmers then filed an action against Christenson for $7,000. Christenson, 683 P.2d at 1320. In that case, we addressed whether Farmers could subrogate against Hinckley's personal injury action after it paid her claim pursuant to an uninsured motorist policy. We held that Farmers, the uninsured motorist carrier, could make payment to

Hinckley, and when she settled her claim or obtained a judgment against a third party, Farmers could subrogate and collect back the amount paid to Hinckley. Christenson, 683 P.2d at 1322. Again, while Farmers was entitled to subrogate against its insured's tortfeasor, by upholding the assignment of Hinckley's claim to Farmers, we allowed the indemnifying carrier to sue the tortfeasor in its own name and, thus, potentially and improperly split Hinckley's cause of action against the tortfeasor. Farmers should have been allowed to sue, but only in the non-settling indemnified party's name under a subrogation theory.

American States argues that, because of our reasoning and holding in Christenson, which as indicated above, was flawed, Reitler should not be applied to invalidate the subrogation clause at issue here. However, while Christenson limited our holding in Reitler to medical payments paid by an insurance company, Christenson did not overrule Reitler, contrary to American States' argument. If the principles of assignment and subrogation had been properly applied in those two cases, there is no conflict.

The "blurring" of the distinction between an assignment and subrogation, in our decisions in Reitler and Christenson, and the misapplication of those concepts in those cases, was unfortunate. There is a definite, legal distinction between the two doctrines, and, in Reitler and Christenson, we erred in reasoning otherwise. Despite that, the public policy considerations underlying our decision in Reitler were correct then and are equally valid here.

As stated above, the public policy considerations underpinning

10

Reitler were three-fold: (1) the insured paid a premium for medical payment coverage; (2) the insured is the one likely to suffer most if medical payments received must be repaid out of a third-party recovery; and (3) the tortfeasor's carrier may consider that the injured person has already been paid medical expenses and can make a smaller offer which allows that such payment has already been made. Reitler, 628 P.2d at 670. In this case, all of those considerations are present. Here, Alfred paid a premium to American States to obtain the PIP endorsement. Clearly, Mary Ann, as one of the insured parties under the policy, would suffer a financial hardship if the PIP benefits she received had to be paid out of her settlement. This is especially true given Mary Ann's assertion that, when she settled with National, the medical expenses paid by American States were specifically excluded from the settlement, and National's claims representative made a smaller offer based on the fact that Mary Ann would not, presumably, have to repay those medical benefits to American States.

American States, nevertheless, argues that § 33-23-203, MCA, specifically allows the subrogation that is attempted here. This statute provides, in pertinent part:

> (2) A motor vehicle liability policy may also provide for other reasonable limitations, exclusions, or reductions of coverage which are designed to prevent duplicate payments for the same element of loss.

American States has provided no legal authority or legislative history which would lead to the conclusion that subrogation is intended to work as a limitation, exclusion or reduction of

11

coverage. Subrogation is a term of art and, had the legislature intended to include subrogation in this statute, it could have easily provided for the same. For example, see § 33-22-1601, MCA. Upon a plain reading of the statute, we are not persuaded that subrogation was intended to be or should be "read into" this statutory provision.

American States also argues that § 33-22-1601, MCA, allows subrogation in this case. That statute provides, in pertinent part:

A disability insurance policy subject to this chapter may contain a provision providing that . . . the insurer is entitled to subrogation. . . .

However, § 33-1-206(2), MCA, defines medical benefits issued incidental to and part of vehicle insurance as "casualty" insurance and specifically excludes such benefits from the statutory requirements governing disability insurance. In addition, § 33-22-101(1), MCA, specifically states that Chapter 22, which governs disability insurance, does not apply to any policy of liability insurance. In this case, we are dealing with a PIP endorsement in an automobile liability insurance policy. Clearly, § 33-22-1601, MCA, does not apply to the insurance policy at hand.

We reaffirm our decision in Reitler and hold that subrogation of medical payment benefits in Montana is void as against public policy. Here, the choice of law provision in the insurance contract would result in medical payment subrogation under Oregon law. Because such subrogation violates Montana's public policy,

12

that term of the insurance contract at issue here is not enforceable.   See Steinke, 525 F.Supp. at 236.

Reversed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13