*317 CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
State Farm Mutual Automobile Insurance Company (State Farm) appeals the decision of the Eighth Judicial District Court, Cascade County, which concluded that Tammy Sobieck (Sobieck) was an uninsured motorist under the terms of Jennifer Nimmick’s (Nimmick) State Farm policy. We affirm in part and reverse in part.
As rephrased by this Court, the issues are:
1. Did the District Court err in determining that, prior to Nimmick’s settlement with Employers Mutual Insurance Company (Employers Mutual), Sobieck was an uninsured motorist pursuant to the terms of Nimmick’s State Farm insurance policy?
2. Did the District Court err in determining that Nimmick’s settlement with Employers Mutual did not affect Sobieck’s status as an uninsured motorist?
Nimmick filed a complaint in the Fourth Judicial District Court, Ravalli County, Montana, alleging the following facts. On May 17, 1990, Sobieck drove an automobile in which Chris White, Allissa Mattson and Nimmick were passengers. The automobile belonged to Sobieck’s boyfriend, Cory Harmon, and was insured by Employers Mutual. Sobieck lost control of the vehicle which ultimately left the road and struck a tree, injuring Nimmick. The complaint accused Harmon of negligent entrustment, White of negligently instructing Sobieck in the operation of a vehicle with which she was unfamiliar and Sobieck of negligent operation of a motor vehicle.
Nimmick’s parents maintained automobile insurance with State Farm at the time of the 1990 accident. While the Ravalli County complaint was pending, Nimmick was also negotiating with State Farm. Nimmick sought to recover under the uninsured motorist provision, claiming that since Employers Mutual denied coverage, the vehicle was uninsured under the terms of the State Farm policy.
Nimmick subsequently entered into a settlement agreement with Employers Mutual, and the Ravalli County cause of action was dismissed. Employers Mutual paid Nimmick $200,000. In the settlement agreement, Employers Mutual stated that it believed that Harmon and White were ‘likely to have insurance coverage for their liabilities.” The settlement was made expressly on behalf of Harmon and White but not on behalf of Sobieck. The settlement released Harmon and White from any and all future liability or claims arising from the accident. Pursuant to the settlement agreement, the claims against Harmon and White were dismissed.
*318 The settlement agreement purported not to be a release of Sobieck, claiming that the $200,000 payment was not made on her behalf. While the Employers Mutual policy covered Harmon and White, the settlement agreement denied that the policy covered Sobieck.
However, the agreement also explained, at some length, what rights Nimmick relinquished in relation to further action against Sobieck. The complaint against Sobieck was to be dismissed without prejudice. Nimmick covenanted that neither she nor her heirs or assignees would execute against Sobieck’s personal assets. The settlement agreement specifically reserved State Farm’s right to seek subrogation against Sobieck. The terms and conditions of the settlement agreement, proposed by Nimmick, were drafted to accomplish two goals: (1) to establish that the $200,000 payment was made on behalf of Harmon and White, not Sobieck, and (2) to preserve Nimmick’s right to seek recovery under her uninsured motorist coverage with State Farm.
On December 29, 1992, Nimmick filed a complaint against State Farm in the Eighth Judicial District Court, Cascade County, Montana. Nimmick claimed that the vehicle in which she was riding at the time of the accident was an uninsured motor vehicle as defined by her parents’ State Farm policies. The basis of the claim was that since Sobieck, the unauthorized driver at the time of the accident, was not covered under the Employers Mutual policy, Nimmick is entitled to uninsured vehicle coverage under the State Farm policy.
On April 15, 1993, State Farm moved for summary judgment, arguing that Nimmick was not entitled to uninsured vehicle coverage under the State Farm policy. The District Court denied State Farm’s motion, concluding that Sobieck was an -uninsured motorist. The parties stipulated to the District Court entering a judgment on the issue of uninsured vehicle coverage pursuant to Rule 54(b), M.R.Civ.R State Farm appeals.
ISSUE 1
Did the District Court err in determining that, prior to Nimmick’s settlement with Employers Mutual, Sobieck was an uninsured motorist pursuant to the terms of Nimmick’s State Farm insurance policy?
Our standard of review of a district court’s summary judgment ruling is the same as that initially used by the district court. Cooper v. Sisters of Charity (1994), 265 Mont. 205, 207, 875 P.2d 352, 353. We examine the record to determine whether a genuine issue of *319 fact exists. If there is no genuine issue of fact, we determine whether the moving party is entitled to judgment as a matter of law. Cooper, 875 P.2d at 353. We review district court conclusions of law to determine if the court’s interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. The District Court concluded that “Tammy Sobieck was an uninsured driver by definition under [the State Farm] insurance policy.”
Nimmick’s State Farm policy defines an uninsured motor vehicle as a vehicle which is “uninsured” as to its ownership, maintenance or use. This policy language reads:
We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle. Uninsured Motor Vehicle — means:
1. a land motor vehicle, the ownership, maintenance or use of which is: .... [Italics in original; underscore added.]
We have interpreted this policy language to provide uninsured motor vehicle coverage “if there is no insurance as to either [the vehicle’s] ownership or its maintenance or its use.” State Farm Auto. Ins. Co. v. Taylor (1986), 223 Mont. 215, 218, 725 P.2d 821, 823 (citing Finney v. Farmers Ins. Co. (Wash. App. 1978), 586 P.2d 519, 526, aff’d, 600 P.2d 1272 (Wash. 1979)). Thus, even though the ownership of the vehicle in this case was insured by Harmon’s Employers Mutual policy, the vehicle was “uninsured” pursuant to Nimmick’s State Farm policy if Sobieck’s use of the vehicle was not insured.
Nimmick’s State Farm policy goes on to define an uninsured motor vehicle as a vehicle, the ownership, maintenance or use of which is:
a. not insured or bonded for bodily injury liability at the time of the accident; or
b. insured or bonded for bodily injury liability at the time of the accident; but
1) the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged; or
2) the insuring company denies coverage or is or becomes insolvent.... [Italics in original; underscore added.]
*320 Employers Mutual initially denied coverage of Sobieck’s use of the vehicle. Therefore, in regard to any claim against Sobieck, the vehicle was uninsured under the express terms of the State Farm policy. Even though the Harmons maintained an insurance policy on the vehicle, Employers Mutual’s denial of coverage rendered the vehicle uninsured under the State Farm policy. Nimmick’s State Farm policy’s uninsured vehicle provision therefore applied to any claims against Sobieck arising from the accident.
We conclude that the District Court properly determined that, prior to Nimmick’s settlement with Employers Mutual, Sobieck was an uninsured motorist pursuant to the terms of Nimmick’s State Farm insurance policy.
ISSUE 2
Did the District Court err in determining that Nimmick’s settlement with Employers Mutual did not affect Sobieck’s status as an uninsured motorist?
State Farm argues that while Sobieck may have originally been an uninsured motorist because Employers Mutual initially denied her claim, her status was altered when Nimmick entered into a settlement agreement with Employers Mutual. State Farm claims that the settlement between Employers Mutual and Nimmick was not solely on behalf of Harmon and White, but rather was on behalf of Sobieck as well.
State Farm relies on a series of cases which stand for the proposition that if the liability insurer initially denies coverage, but later settles with the injured party on behalf of the liable party, the liable party is not “uninsured” and thus the injured party may not recover from his or her own uninsured motorist coverage. It is immaterial whether the insurer continues to deny coverage if it in fact settles on behalf of the liable party. See Jones v. Sentry Insurance Co. (Ct.App.Minn. 1990), 462 N.W.2d 90; Fryer v. National Union Fire Ins. Co. (Minn. 1985), 365 N.W.2d 249; Coleman v. Florida Insurance Guaranty Assoc. Inc. (Fla. 1988), 517 So.2d 686; Rister v. State Farm Mut. Auto. Ins. Co. (Mo.App. 1984), 668 S.W.2d 132.
For example, in Rister, Ricky Rister was killed when the pickup truck in which he was a passenger collided with a fuel transport truck. Rister, 668 S.W.2d at 133. In a suit brought by Rister’s family, the insurer of the pickup denied coverage for the driver, invoking the “fellow employee” exclusion in its policy. The insurer of the pickup later settled with Rister’s family, and the claims against the driver’s *321 estate were dismissed. The Missouri Court of Appeals concluded that, although the insurer of the pickup initially denied coverage, the settlement with Rister’s family revoked the initial denial. Rister, 668 S.W.2d at 134-35. Since Rister’s family recovered insurance benefits on behalf of the driver, he was no longer considered uninsured. Therefore, the Risters could no longer pursue their uninsured motorist claim against Rister’s own insurance company.
We must examine the terms of the settlement agreement to determine if the settlement was in fact on behalf of Sobieck. We first note that Nimmick proposed the relevant terms of the agreement to further her attempt to recover from both Employers Mutual and State Farm. The agreement states, in relevant part:
Nimmick proposed the basic terms of this agreement for the sole purpose of (i) settling her disputes with Harmon and White and (ii) protecting her claims under the underinsured and uninsured provisions of her insurance policy with State Farm Insurance Company (“State Farm Policy”) and (iii) reaching a settlement which would comply with all of the terms and provisions of said State Farm Policy .... [Emphasis added.]
Any ambiguities must be construed against the drafter. Wyman v. DuBray Land Realty (1988), 231 Mont. 294, 298, 752 P.2d 196, 199. In determining the contract’s purpose and intent, we examine the contract as a whole, giving no special deference to any specific clause. Peterson v. Hopkins (1984), 210 Mont. 429, 684 P.2d 1061; St. Paul Fire and Marine Ins. Co. v. Cumiskey (1983), 204 Mont. 350, 665 P.2d 223.
After reviewing the settlement agreement as a whole, we conclude that the settlement was made on behalf of Sobieck as well as Harmon and White. First, we note that Sobieck was a party to the settlement agreement. Had the settlement not been on her behalf, she would not have been included as a party to the agreement. The terms of the settlement also indicate that it was in fact made on her behalf. The settlement agreement reads, in relevant part:
In consideration of the mutual understandings and promises contained herein, the parties hereto hereby covenant and agree as follows: ...
b(l). Execute a covenant not to execute against Sobieck’s personal assets wherein Nimmick and her parents, on behalf of themselves, their agents, heirs, successors, and assigns, shall covenant that they (and all of them) shall never initiate, pursue, or levy any *322 execution for any judgment (obtained or obtainable) against Sobieck, and shall likewise forever forebear to collect (or attempt to collect) any amount as a debt, obligation, or otherwise, relating to any of Nimmick’s claimed injuries arising from the Accident, from the personal assets of Sobieck or any member of Sobieck’s family. This covenant is not intended to affect any right of State Farm, if any, to seek subrogation.
b(2). Execute an agreement not to assign any action, claim or judgment of Nimmick against Sobieck to any other person or entity, including without limitation Mid-Century Insurance Company or any of its affiliates or State Farm Insurance Company or any of its affiliates.
c. Dismiss Nimmick’s Complaint in the tort action ... against Sobieck without prejudice ....
f. Execute a full, final and unconditional release of Employers Mutual for any and all claims under Section 33-18-201 and 33-18-242, Montana Code Annotated, in respect of any claims arising from Tammy Sobieck’s putative status as an insured under the Employer’s Mutual Policy.
In light of this broad sweeping release language, it is disingenuous for Nimmick to claim the settlement was not made on Sobieck’s behalf. A basic premise of contract law is mutuality of consideration. See Richardson v. Safeco Insurance Co. (1983), 206 Mont. 73, 76, 669 P.2d 1073, 1074. The language above, which releases Sobieck from financial responsibility for the accident, clearly appears to be in exchange for the monetary settlement with Employers Mutual. We do not believe releasing Sobieck was a gratuitous act on Nimmick’s part.
Nimmick relies on the purported reservation of State Farm’s right of subrogation found in the settlement agreement. As previously stated, the terms of the settlement agreement state:
This covenant is not intended to affect any right of State Farm, if any, to seek subrogation.
Nimmick argues that because the settlement agreement reserved State Farm’s right to seek subrogation against Sobieck, she has not been “released” from liability for Nimmick’s injuries. Nimmick claims that because Sobieck is still potentially liable to State Farm under a subrogation action, she has not been released and, therefore, the settlement with Employers Mutual was not on her behalf.
*323 This argument is faulty for several reasons. First, an insurer’s subrogation right vests upon its payment of a claim. One authority summarized this principle as follows:
No right of subrogation arises until the claim has been paid. [Footnote omitted.] Thus, before subrogation can be had, the insurer must have paid the insured his loss according to the contract, for it is this securing of satisfaction by the insured which gives the insurer the right to be subrogated to the rights of the insured against a wrongdoer primarily liable for the loss. [Footnote omitted.]
16 Couch on Insurance 2d, § 61:49 (1983). This principle is well-established in our case law. See St. Paul Fire and Marine v. Allstate (1993), 257 Mont. 47, 51, 847 P.2d 705, 707; Skauge v. Mountain States Tel. & Tel. Co. (1977), 172 Mont. 521, 525, 565 P.2d 628, 630.
In this case, State Farm has not paid any benefits to Nimmick. Therefore, State Farm does not have a vested right to seek subrogation against Sobieck.
Secondly, an insurer seeking subrogation has only those rights maintained by its insured. The insurer steps into its insured’s shoes. Therefore, in a subrogation action, the insurer sues the purported tortfeasor in place of its insured. In St. Paul Fire & Marine v. Glassing (1994), [269 Mont. 76], 887 P.2d 218, we adopted language from Couch on Insurance in stating:
The right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created. In other words, the concept of subrogation merely gives the insurer the right to prosecute the cause of action which the insured possessed against anyone legally responsible for the latter’s harm ....
Glassing, 887 P.2d at 220-21, (citing 16 Couch on Insurance 2d, § 61:37 (1983)).
In this case, Nimmick executed broad sweeping covenants not to execute against the personal assets of Sobieck or her family. State Farm, stepping into Nimmick’s shoes, has likewise been limited from executing against Sobieck. While the settlement agreement purports to maintain State Farm’s right of subrogation, this subrogation right, if any, is very limited.
By severely limiting or destroying State Farm’s right of subrogation, Nimmick further released Sobieck from any potential liability *324 arising from the accident. In a section entitled “Release of Tortfeasor and Effect Thereof,” Couch on Insurance states:
If the employer’s or insurance carrier’s statutory right of subrogation is impaired by the act of the employee in settling with the wrongdoer, the employee’s right to compensation is barred.
A covenant not to levy against the tortfeasor by the insured destroys the right to subrogation, [footnote omitted] and as such may bar the insured’s recovery under the policy. [Emphasis added.]
16 Couch on Insurance 2d, § 61:191 (1983). By inhibiting subrogation, Nimmick has barred her claim against State Farm.
After examining the settlement agreement and its underlying effects as a whole, we conclude that the settlement between Employers Mutual and Nimmick was made on behalf of Sobieck as well as Harmon and White. Because the settlement was on behalf of Sobieck, she is no longer an uninsured motorist under the terms of Nimmick’s State Farm policy. We affirm as to issue one and reverse as to issue two the decision of the District Court.
JUSTICES GRAY, WEBER and NELSON concur.