JUSTICE COTTER
delivered the Opinion of the Court.
¶ 1 The following Certified Questions were presented to this Court by the U.S. District Court for the District of Montana, Missoula Division, on March 19, 2001, and accepted on March 27, 2001:
1. Is subrogation by the insurer to recover medical payments advanced to its insured, and later paid by the tortfeasor, void in Montana as against public policy?
2. Is it the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of contract language to the contrary?
3. Does a provision in an insurance policy issued in Colorado, stating that Colorado law governs the insurer’s subrogation rights for [personal injury protection] PIP benefits, violate Montana’s public policy, if Colorado law allows subrogation regardless of whether the insured has been made whole and fully compensated, including attorney fees and costs?
*271 ¶2 We answer Certified Questions #2 and #3 in the affirmative. We do not answer Question #1.
FACTUAL BACKGROUND
¶3 Elinor and Harlan Swanson divide their time between their two residences, spending at least six months per year in Plains, Montana, and the remaining time traveling or in their home in Colorado Springs, Colorado. They have owned their Montana home since the early 1960s but lease the land on which it is built from the U.S. Forest Service. They have owned their Colorado home since 1981.
¶4 On August 4, 1998, while driving their Montana-licensed Chevrolet Suburban through Ravalli, Montana, to Plains, the Swansons were involved in a motor vehicle accident with a USF/Reddaway (Reddaway) tractor-trailer. Both Mr. and Mrs. Swanson were injured in the accident and subsequently incurred over $50,000.00 in medical expenses, most of which was incurred in Montana.
¶5 The Swansons were insured through the Hartford Insurance Company of the Midwest (Hartford). They had purchased their automobile insurance policy in Colorado several years before the accident and had paid all premiums required under the policy. Included in this policy were several provisions that are relevant in determining the answers to the certified questions. They are:
1. a provision for “PIP” coverage, a Colorado-statutorily required type of no-fault insurance also known as “personal injury protection.” Colo. Rev. Stat. §§10-4-701 etseq. Under PIP coverage, Hartford is required to pay certain types of losses and expenses, including medical expenses, lost wages and rehabilitation expenses;
2. a subrogation clause granting Hartford the right to recover any payments it pays to an insured under PIP coverage in the event the insured recovers damages from the party responsible for the bodily injury; and
3. a choice of law provision stating that any dispute concerning the denial or delay of PIP benefits or subrogation rights will be governed by Colorado law.
¶6 After the accident, the Swansons made claims under their policy for PIP coverage. Hartford paid some of the claims but denied others. Hartford subsequently learned that Reddaway’s insurer, Constitution State Service Company (Constitution), intended to make payments to the Swansons. On October 7, 1998, Hartford wrote a “subrogation claim” letter to Constitution, notifying Constitution of its intent to pursue subrogation to recover monies it had paid on behalf of the *272 Swansons.
¶7 On November 20,1998, Constitution issued a check on behalf of Reddaway for $25,962.60, payable to Elinor Swanson and Hartford, indicating on the face of the check that it was for “advance payment of medical expenses.”
¶8 In mid-December, 1998, Mrs. Swanson endorsed the check and forwarded it to Hartford with a letter from her attorney requesting that Hartford endorse the check and return it to her. Hartford did not do so at that time, but on March 23,2000, after the Swansons had filed an action against Hartford, Hartford endorsed the check, returned it to Mrs. Swanson and waived its subrogation rights.
¶9 OnNovember 11,1999, the Swansons settled their personal injury claims against Reddaway. This settlement did not exceed the Swanson’s actual damages and did not include any compensation for attorney fees or costs incurred by the Swansons to obtain recovery from Reddaway, nor did it reimburse the Swansons for insurance premiums paid to Hartford since the origination of their automobile policy. However, it is undisputed that Reddaway’s limits of liability exceeded the amount of the settlement reached between the Swansons and Reddaway.
¶10 At some unspecified date prior to March 23, 2000, the Swansons filed an action against Hartford in the Fourth Judicial District Court of Montana, Missoula County, asserting that Hartford had breached the insurance contract and had violated the Unfair Claims Settlement Practices Act, § 33-18-201, et seq., MCA. Hartford had the case removed to the United States District Court for the District of Montana, Missoula Division, and filed a motion for partial summary judgment, requesting that the District Court determine that Colorado law governed Hartford’s subrogation rights vis-a-vis the Swansons’ settlement with Reddaway. The parties fully briefed the issues and participated in oral argument.
¶11 On March 19, 2001, Federal Magistrate Judge Leif B. Erickson submitted a Certification Order to this Court with the above three certified questions. This Court accepted the certification on March 27, 2001.
¶12 On September 6, 2001, this Court ordered the parties to present briefs and oral arguments to the Court en banc on November 1, 2001. In addition to the parties participating in oral argument, we granted the Montana Trial Lawyers Association (MTLA) leave to appear as amicus curiae.
DISCUSSION
¶13 We shall first address Certified Question # 2.
*273 ¶14 Certified Question # 2: Is it the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of contract language to the contrary?
We answer this question affirmatively.
¶15 In 1977, this Court established the “made whole” doctrine to be applied in insurance subrogation cases. The doctrine required that an insured be “made whole” before an insurer could assert its subrogation rights, which meant that, not only must the insured recover all of her losses but also all costs of recovery as well, such as attorney fees and costs of litigation. In other words, borrowing from the language of Certified Question # 2, the insured must be “totally reimbursed for all losses as well as costs, including attorney fees.” See Skauge v. Mountain States Tel. and Tel.Co. (1977), 172 Mont. 521, 565 P.2d 628.
¶16 In Skauge, the Skauges lost all their personal possessions when their rented home exploded and burned. The Skauges were insured through the Unigard Insurance Group, with personal property limits of $4,000.00 with a $400.00 incidental living expense allowance. The policy also contained a subrogation clause that read: “This Company may require from the insured an assignment of all rights of recovery against any party for loss to the extent that payment therefore is made by this Company.” Skauge, 172 Mont. at 523, 565 P.2d at 629.
¶17 Unigard determined that the Skauges’ loss exceeded the policy coverage and delivered to the Skauges’ attorney a check for $4,328.98 and a proof of loss for the Skauges’ signature. However, Skauges refused to give Unigard an assignment of rights. Skauges then attempted to recover the balance of their $11,000+ loss from the tortfeasors, and Unigard asserted its subrogation rights. Skauge, 172 Mont. at 523, 565 P.2d at 629.
¶18 The district court ruled that Unigard’s adjuster and the Skauges had no “meeting of the minds” as to the subrogation issues and therefore Unigard was entitled to subrogation up to $4,328.98, which was the amount it had paid. Skauge, 172 Mont. at 524, 565 P.2d at 629-30. The Skauges appealed and this Court held, “that when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorneys fees, before the insurer can assert its right of leghl subrogation against the insured or the tortfeasor.” Skauge, 172 Mont. at 528, 565 P.2d at 632.
¶19 The Court explained its equitable holding by stating, “[w]hen the sum recovered by the Insured from the Tort-feasor is less than the *274 total loss and thus either the Insured or the Insurer must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.” (Emphasis in original.) Skauge, 172 Mont. at 528, 565 P.2d at 632.
¶20 This Court reaffirmed Skauge in 1994 in DeTienne Assoc. v. Farmers Union Mut. Ins., 266 Mont. 184, 879 P.2d 704. In DeTienne, we restated the purpose of subrogation as being “to prevent injustice by ‘compelling the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pa}r it. It is an appropriate means of preventing unjust enrichment.’ ” DeTienne, 266 Mont. at 188, 879 P.2d at 707 (citing Youngblood v. American States Ins. Co. (1993), 262 Mont. 391, 866 P.2d 203.) We rejected the insurer’s argument that its contract’s subrogation clause mandated that it be reimbursed for all monies it had paid to its insured, and reiterated the “made whole” policy established in Skauge. We explained that the policy subrogation clause
by its own terms, [did] not extend subrogation beyond the equitable principles set out in Skauge. The clause permits [the insurer] to subrogate-it does not dictate upon what terms that subrogation shall occur. The terms of subrogation are not provided by the parties’ contract, here, but are provided by the equitable principles inherent in the Skauge ruling.
DeTienne, 266 Mont. at 190, 879 P.2d at 708. Thus, we held that the principles announce d in Skauge dictated how subrogation rights would be administered, and not the blanket language of the insurance policy.
¶21 As recently as August 2001, this Court again implemented the “made whole” policy in State Compensation Ins. Fund v. McMillan, 2001 MT 168, 306 Mont. 155, 31 P.3d 347. In McMillan, we held that the Montana State Compensation Insurance Fund could not assert its subrogation claim in the context of a workers’ compensation claim until the injured worker had fully recovered his losses, as determined by the district court in a declaratory action preceding the workers’ compensation action, as well as all costs of recovery. McMillan, 2001 MT 168, 306 Mont. 155, 31 P.3d 347.
¶22 Hartford argues that because the Montana Legislature revised § 33-23-203(2), MCA, in 1997 to allow for “reasonable subrogation” and declined to specifically include a “made whole” requirement in the statute, this Court “cannot add what has been omitted.” Swansons, on the other hand, argue that we must presume that the Legislature was fully aware of the well-established equitable common law doctrine • adopted in Montana, and that it could have easily excluded some portion ofthat doctrine, if it chose. We agree with Swansons. Gaustad v. City of Columbus (1994), 265 Mont. 379, 877 P.2d 470 (‘We presume *275 that the legislature is aware of the existing law, including our decisions interpreting individual statutes.... We presume that if the legislature disagreed with our interpretation ..., it would have amended the statute accordingly. It did not do so.”); In re Wilson’s Estate (1936), 102 Mont. 178, 194, 56 P.2d 733, 737 (“In the enactment of any law the legislature is presumed to proceed having in mind the existing law....”). Therefore, we conclude that § 33-23-203(2), MCA (1997), as revised by the Legislature, approved subrogation clauses “designed to prevent duplicate payments for the same element of loss under a motor vehicle liability policy or under another casualty policy” and that under Montana’s established common law, duplicate payments do not occur until the insured has been made whole for all losses, as well as costs of recovery.
¶23 The consistent jurisprudence underlying our past and current “made whole” cases and the policy established by them are not in conflict with the revised statute. Rather, the common law and the statute jointly establish two rules of subrogation-an insured should not receive duplicate payments for the same element of loss, and the insurer may not assert subrogation rights until the insured has been fully compensated for his damages, including attorney fees and costs.
¶24 In his dissent, Justice Rice concludes that the “made whole” doctrine "... cannot possibly be applied to risks that the insurer has not been paid to assume.” This assertion is surprising in light of the fact that Justice Rice authored our opinion in McMillan, wherein this Court reaffirmed the “made whole” doctrine in response to the State Fund’s attempt to assert a subrogation claim against McMillan’s third-party tort recovery. We concluded in McMillan that State Fund could not assert its subrogation interest until McMillan had recovered “the amount of his entire loss of $4.7 million plus costs of recovery ...” McMillan, ¶15. It goes without saying that the State Fund did not begin to cover all of McMillan’s losses, and that, when he sought and was awarded $4.7 million for the tortfeasor, McMillan was awarded damages far in excess of those the State Fund either paid or had a contractual duty to assume. Nonetheless, relying squarely on the “made whole” doctrine, this Court absolutely precluded State Fund from asserting a subrogation interest against any amounts awarded to McMillan, making no distinction between those amounts awarded him for losses covered by State Fund, and those amounts awarded for damages in excess of those covered by State Fund. The dissent’s conclusion that proper application of the “made whole” doctrine would not permit the insured to recover unrelated losses before the insurer is entitled to subrogate for the particular losses it was paid to assume, therefore appears to fly in the face of our unequivocal holding in *276 McMillan.
¶25 In his concurring and dissenting opinion, Justice Leaphart maintains that our holding is too broad, and that an insurer should be allowed its subrogation rights once the insured has been made whole, including costs and attorney fees, as to that element of damages for which she purchased insurance. Theoretically, the logic of his argument is appealing. If a plaintiff recovered a discrete amount from her insurer for a particular element of loss, and then recovered the identical amount from a third party, plus her costs and attorney fees associated with that recovery, and the amounts of each were specifically and separately determined either by agreement or in a judgment, then, in theory, subrogation should proceed. In the alternative, as Justice Rice suggests, the subrogating insurer could simply recover its payment, less that amount attributable to the costs and fees associated with the recovery. However, there is a fundamental practical flaw in either analysis.
¶26 Seldom to never do we find such perfect symmetry in an award or settlement. Typically, as here, the ultimate settlement (or judgment amount) is for a gross amount, without allocation for each particular element of loss. Thus, we would be left to speculate as to whether the insured did recover the identical amount of the loss for which the insurer seeks subrogation. Perhaps the jury assumed the plaintiff had medical payments coverage, and did not award the full amount of the medical bills. Even more typical and pervasive is the situation where a settling insurer, knowing full well that the plaintiff had medical payments coverage, takes this into account in its settlement offer and reduces its offer accordingly. In either instance, there is not a duplicate payment. However, if we were to accept Justice Leaphart’s and Justice Rice’s proposed solution, we would have to engage in the presumption that the insured was compensated for the loss and reimburse the insurer, regardless of the presence of these factors. Quite plainly, this would resolve the question of who should go uncompensated in favor of the insurer who has collected a premium for its services, and against the injured plaintiff who could very well end up sacrificing a portion of her uncompensated recovery for the benefit of the insurer.
¶27 Twenty-five years ago, we said in Skauge that, if one must to some extent go uncompensated, it should be the insurer rather than the injured party. Skauge, 172 Mont. at 528, 565 P.2d at 632. The only practical way we can satisfy this principle is to allow full compensation to the plaintiff first, before subrogation is allowed.
¶28 We therefore hold that it is the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, *277 including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of any contract language providing to the contrary. We also conclude that this policy is not in conflict with § 33-23-203(2), MCA (1997).
¶29 Certified Question #3-: Does a provision in an insurance policy issued in Colorado, stating that Colorado law governs the insurer’s subrogation rights for [personal injury protection] PIP benefits, violate Montana’s public policy, if Colorado law allows subrogation regardless of whether the insured has been made whole and fully compensated, including attorney fees and costs?
¶30 Having concluded that the Hartford policy language runs contrary to Montana’s “made whole” doctrine, we must determine whether the policy provision providing that Colorado law governs Hartford’s subrogation rights for PIP benefits is applicable.
¶31 As Hartford points out in its brief, Section IV, Part F of the Swanson’s Hartford policy concludes with the following sentence granting Hartford rights of subrogation:
[Hartford] shall be entitled to recovery under Paragraphs A [right to subrogate directly against a third party tortfeasor] and B [right to subrogate against insured who recovers damages from third party tortfeasor] only after the person has been full [sic] compensated for damages by another party.
Hartford argues that this clause is to be interpreted in accordance with Colorado law and, that under Colorado law, “an insured is deemed to be fully compensated when the tortfeasor’s insurance coverage exceeds the reasonable compensation paid to the injured person by the tortfeasor’s insurer.”
¶32 We addressed a very similar situation in Youngblood. The insurance policy in Youngblood contained a choice of law provision favoring Oregon law. Applying Oregon law would have resulted in medical payment subrogation, which was precluded under Montana law. In Youngblood, we reaffirmed our earlier decision in Allstate Ins. Co. v. Reitler (1981), 192 Mont. 351, 628 P.2d 667, in which we held that subrogation of medical payment benefits was void in Montana as against public policy. While this Court has previously held that, “if a contract’s terms are clear and unambiguous, the contract language will be enforced,” Youngblood, 262 Mont. at 395, 866 P.2d at 205 (citing Keller v. Dooling (1991), 248 Mont. 535, 539, 813 P.2d 437, 440), we have also acknowledged an exception to that rule. “The only exception to enforcing an unambiguous contract term is if that term violates public policy or is against good morals.” Youngblood, 262 Mont. at 395, 866 P.2d at 205 (citing Steinke v. Boeing Co. (D. Mont. 1981), 525 F.Supp. 234, 236). This exception is applicable here. Applying *278 Youngblood, we find the Colorado provision in the Hartford policy here void as against our public policy. Application of Colorado law would result in the allowance of subrogation before an insured has been made whole, which violates Montana public policy.
¶33 Therefore, we conclude that application of the Colorado choice of law provision violates Montana public policy, and that Montana’s “made whole” doctrine shall be applied to the subrogation provision.
¶34 Having answered Certified Questions #2 and #3 in the affirmative, it is unnecessary to the facts and dispute of this case to address the broad scope of Certified Question #1. Therefore, we decline to answer it.
JUSTICES TRIEWEILER, NELSON and REGNIER concur.