No. 00-791

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 130

DANIEL J. and SHEILA M. O'NEILL,
As Trustees of the SHEILA M. O'NEILL
FAMILY TRUST,

        Petitioners and Respondents,

    v.

THE DEPARTMENT OF REVENUE,
STATE OF MONTANA,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                 In and for the County of Silver Bow,
                 The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Daniel J. Whyte, Tax Counsel, Montana Department of Revenue,
Helena, Montana

        For Respondents:

        Mollie A. Maffei, Maffei Law Firm, Butte, Montana

                        Submitted on Briefs: August 16, 2001

                              Decided:  June 18, 2002

Filed:

             _____
                      Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    The Department of Revenue (DOR or Department) appraised three properties owned by Daniel and Sheila O'Neill and assessed a value to each property. The O'Neills claimed the properties had been overvalued and challenged the values through appropriate administrative procedures and then to the Montana Second Judicial District Court. The District Court agreed with the O'Neills and assigned significantly lower values to the subject properties. The DOR appeals the District Court's ruling. We reverse.

¶2    The issue before this Court is whether the District Court erred in overturning the State Tax Appeal Board and substituting its assessment of value in place of the Department of Revenue's.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    At issue are two parcels of property, designated for purposes of this decision as the Dental Clinic and Vacant Land. In the original administrative proceeding, the value of a third parcel known as Big A was also disputed. This parcel was subsequently sold and will not be addressed here.

¶4    In 1989, the O'Neills purchased over twenty-five contiguous and non-contiguous lots in Block Number 11 of the Atherton Place on the Lakes Addition in Butte, Montana, for $85,000. Six contiguous lots were subsequently used in 1991 for construction of the Dental Clinic at a completed construction cost of $177,762. The remaining undeveloped lots constitute the Vacant Land parcel. At the time of the District Court proceedings, the O'Neills were attempting to sell the Vacant Land for approximately $179,000.

¶5    In 1993, the DOR performed an original assessment of the properties and assigned market

2

values to the Dental Clinic land, the Dental Clinic itself, designated the "Dental Clinic improvements," and the Vacant Land. The O'Neills, believing that the properties had been overvalued, requested that the DOR review and revise its original assessments. After review in 1994, the Department reduced the land values for both parcels but did not change the assessed value of the Dental Clinic improvements.

¶6 The O'Neills continued to maintain that the properties had been overvalued and appealed to the Silver Bow County Tax Appeal Board (CTAB). CTAB denied their appeal.

¶7 The O'Neills then appealed to the State Tax Appeal Board (STAB) which granted further reductions to the land values and ordered that the properties be entered into the Silver Bow County tax rolls.

¶8 Dissatisfied with the reductions assessed by STAB, the O'Neills, in accordance with § 15-2-303, MCA, appealed STAB's ruling to the Montana Second Judicial District Court. The District Court conducted a hearing in November 1996 during which additional evidence was presented in the form of the testimony of appraiser Jack McLeod, who testified on behalf of the O'Neills. McLeod, who had appraised the Dental Clinic in 1990 but had not appraised the Vacant Land, testified that the DOR had overvalued the O'Neills' properties and that comparable sales in the area proved a lower value should have been applied. The District Court vacated STAB's values and assigned significantly lower values to the O'Neills' properties. DOR appeals.

¶9 The table below reflects the various values assigned to these two parcels and the Dental Clinic improvements from the time of purchase to June 2000 when the District Court issued its ruling.

| | Dental Clinic- | Dental Clinic - | Vacant Land |
| --- | --- | --- | --- |

|  | land | improvements | |
|---|---|---|---|
| **Purchase/construction price** | Included in price of Vacant Land | 177,762 | 85,000 |
| **DOR 1993** | 62,790 | 220,200 | 357,750 |
| **DOR Review 1994** | 45,450 | 220,200 | 289,350 |
| **CTAB** | denied appeal - no reassessment | | |
| **STAB 1995** | 44,250 | 220,200 | 246,000 |
| **Requested by O'Neills** | 21,617 | 175,975 | 81,066 |
| **District Court June 26, 2000** | $190,000 | | 85,000 |

## STANDARD OF REVIEW

¶10    A district court reviews an administrative decision in a contested case to determine whether the findings of fact are clearly erroneous and whether the agency correctly interpreted the law. *Laudert v. Richland County Sheriff's Dept.*, 2000 MT 218, ¶14, 301 Mont. 114, ¶14, 7 P.3d. 386, ¶14**. We employ the same standards when reviewing a district court order affirming or reversing an administrative decision.  *Laudert, ¶14 (citing Langager v. Crazy Creek Products, Inc.***, 1998 MT 44, ¶13, 287 Mont. 445, ¶13, 954 P.2d 1169, ¶13.)**

## DISCUSSION

¶11    The Legislature has mandated that the DOR assess all property subject to taxation at 100% of its "market value," except under certain circumstances that do not apply to this case.  Sections 15-8-101 and **15-8-111, MCA.  "Market value" is statutorily defined as "the value at which property would change hands between a willing buyer and a willing seller, neither being**

**under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Section 15-8-111(2)(a), MCA. In addition to defining "market value," the Legislature also addressed approaches to be used to determine market value:**

> **(b)** **If the department uses <u>construction cost</u> as one approximation of market value, the department shall fully consider reduction in value caused by depreciation, whether through physical depreciation, functional obsolescence, or economic obsolescence.**

> **(c)** **If the department uses the <u>capitalization of net income</u> method as one approximation of market value and sufficient, relevant information on <u>comparable sales</u> and <u>construction cost</u> exists, the department shall rely upon the two methods that provide a similar market value as the better indicators of market value. (Emphasis provided) Sections 15-8-111(2)(b) and (c), MCA.**

¶12 The DOR explained that it consistently utilizes, as it did in this case, one of the three approaches specified by the Legislature when appraising property to determine market value, *i.e.,* the cost approach (§ 15-8-111(2)(b), MCA), the market data approach (*i.e.*, comparable sales, § 15-8-111(2)(c), MCA), and the income capitalization approach (§ 15-8-111(2)(c), MCA). The DOR maintained that this Court has specifically accepted these appraisal approaches in *Albright v. Montana Dept. of Revenue* (1997), 281 Mont. 196, 933 P.2d 815.

¶13 The Department explained that it appraised the Vacant Land as well as the land on which the Dental Clinic is located at $500 per foot of Monroe Avenue street frontage, and a significantly lesser per foot figure for lots not facing Monroe Avenue. The DOR claimed that its "per foot land values" were appropriately derived from market data acquired from the sales of comparable property between 1988 and 1992. Using this market data, the DOR then utilized the Computer Assisted Land Pricing program and derived the square foot land

values.

¶14    For the Dental Clinic improvements, the DOR had no comparable sales available. Therefore, the Department used the cost approach which took the estimated value of the land, based on market data, and added to it the current construction or replacement costs of the improvements. The Department then subtracted the amount of depreciation from the improvements. This method is known as "Replacement Cost New Less Depreciation."

¶15    The O'Neills argued that the Dental Clinic improvements should have been assessed at the same value as the neighboring veterinary clinic's improvements. Both clinics had been built at approximately the same time, on the same size parcel of land, for approximately the same construction costs, and were similarly structured. The DOR contended, however, that while similarities did exist, the clinics were not comparable for several reasons, including but not limited to, major differences in construction, interior finish, layout, roof structure, partitions, type of plumbing, the existence of Dental Clinic outbuildings, as well as paving and landscaping differences.

¶16    The O'Neills presented the DOR with various "comparable properties" in an effort to show that their parcels had been overvalued compared to these other properties. The DOR concluded, however, that the presented properties were not "comparable sales" nor were they similar enough in size or property class; for example, some of the presented comparables were agricultural and residential properties.

¶17    During the District Court hearing, authorized pursuant to § 15-2-303(5), MCA, Jack McLeod, an experienced real estate broker, developer and appraiser, testified on behalf of the O'Neills. Mr. McLeod offered testimony that based upon comparable sales figures with

6

which he was familiar, the DOR had overvalued the O'Neills' property. He also stated that the Dental Clinic and the veterinary clinic should have comparable assessments based on construction costs and the other similarities of the buildings. The DOR countered that Mr. McLeod had never appraised the value of the veterinary clinic and had appraised the Dental Clinic six years earlier, making that appraisal, by Mr. McLeod's admission, stale. The DOR further argued that Mr. McLeod was testifying to values of other properties for which he had not performed assessments, lacked awareness of zoning, and was missing other pertinent information necessary to form reliable appraisals and assessments.

¶18     In its Findings of Fact/Conclusions of Law issued pursuant to Rule 52(a), M.R.Civ.P., the District Court concluded that the DOR's approach was "theoretical" and adopted instead an "acquisition value" approach, stating that "true market value can only be determined when the property is eventually sold, and until it is sold, the purchase price of the property should be  uses [sic] as the market value."

¶19     Upon concluding that the acquisition value was the appropriate method to use to determine the value of the O'Neills' property, the District Court ruled that the assessed value of the Vacant Land and the land beneath the Dental Clinic should be its purchase price of $85,000. The court further concluded that the price a taxpayer may be asking for a parcel of property for sale has nothing to do with the present value, and until the land is sold, the value of the land is a matter of conjecture. The District Court also concluded that the different uses of the Dental Clinic and the veterinary clinic "do not justify [a] higher value when the construction costs of both is [sic] the same." The District Court therefore determined that the assessed value of the Dental

7

Clinic should be its 1991 construction cost of $177,000+, plus the cost of paving, resulting in a total assessment value of $190,000.

¶20     Moreover, the District Court opined in its legal conclusions that:

> STAB concludes that the tax payer has not produced sufficient evidence to establish that any of his proposed land values are true market values. However, STAB uses its theoretical approach based on appraiser manuals to determine what it concludes is true market value. True market value can only be determined when the property is eventually sold, and until it is sold, the purchase price of the property should be uses [sic] as the market value.

¶21     On appeal, the DOR maintains that it specifically does NOT use the acquisition value as the market value, defining "acquisition value" as the price at which a parcel of property most recently sold on the market. It argues that the acquisition value was not a statutorily-authorized method for determining market value. Moreover, the DOR contends that this Court has specifically held that "Montana does not have an 'acquisition value' system of taxation." *Roosevelt v. Montana Dept. of Revenue*, 1999 MT 30, ¶43, 293 Mont. 240, ¶43, 975 P.2d 295, ¶43. Further, the DOR argues that the acquisition value system of taxation results in significant disparity among similarly situated properties, and that the District Court's assessment of the O'Neills' properties based on acquisition value in Silver Bow County only, contravenes § 15-7-112, MCA, which requires that the same method of appraisal and assessment be used in each county of the State.

¶22     In reaching our decision in this matter, we are guided by § 2-4-704, MCA, which provides:

> (2)     The Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

8

(a)     The administrative finding, inferences, conclusions or decisions are:
. . .
(v)     clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

Under this statute, the District Court as a reviewing court could have reversed or modified STAB's decision and remanded the case for further proceedings if it concluded that the O'Neills' substantial rights had been prejudiced because the administrative findings were clearly erroneous in view of the reliable evidence of the record. *Dept. Of Revenue v. Grouse Mt. Development* (1985), 218 Mont. 353, 707 P.2d 1113. However, the District Court reached no such conclusion. It simply applied its own analysis in place of that applied by STAB.

¶23     Section 2-4-704, MCA, does not contemplate a wholesale substitution of the District Court's opinion for that of the agency. This Court has stated that "it is not a judicial function to act as an authority on taxation matters. Tax appeal boards are particularly suited for settling disputes over the appropriate valuation of a given piece of property, and the judiciary cannot properly interfere with that function." *Grouse*, 218 Mont. 355, 707 P.2d 1115 (citing *Northwest Land v. State Tax Appeal Board* (1983), 203 Mont. 313, 661 P.2d 44, overruled on other grounds by *Devoe v. Department Of Revenue* (1993), 263 Mont. 100, 866 P.2d 228). Moreover, we have held that "[a]ssessment formulations are within the expertise of the State Tax Appeal Board and we will uphold their decisions unless there is a clear showing of an abuse of discretion." *Grouse*, 218 Mont. 355-56, 707 P.2d 1115 (citation omitted).

¶24     There was no showing in the District Court that STAB's findings and conclusions were

clearly erroneous in view of the evidence of record, nor was an abuse of discretion demonstrated. Rather, the O'Neills simply sought and received the application of a different analysis more favorable to them. We conclude that, absent the finding required under § 2-4-704, MCA, STAB's values must be upheld. *Grouse*, 218 Mont. 355, 707 P.2d 1115 (citation omitted).

¶25 Accordingly, we reverse and remand for reinstatement of the STAB assessments.


                                                              /S/ PATRICIA COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART