JUSTICE COTTER
delivered the Opinion of the Court.
¶ 1 The Department of Public Health and Human Services (“DPHHS”) appeals from a Memorandum and Order of the Montana First Judicial District Court, Lewis and Clark County, in which the court held that the net assets of King Colony Ranch, Incorporated, (“KCR” or “Colony”)-a Hutterite colony to which the seven above-named Claimants (“Claimants”) belong-are not available to Claimants and that a trust relationship does not exist between Claimants and KCR, nor between DPHHS and KCR. On cross-appeal, Claimants argue that the District Court, in granting Claimants’ petition, failed to address an allegedly erroneous conclusion of law made at the administrative level, and ask this Court to affirm the result reached by the District Court but explicitly reverse the administrative agency’s conclusion that KCR owes Claimants an enforceable legal duty of support. We reverse in *373 part and remand for further proceedings. Because we conclude that the trust relationship analysis is dispositive of the question of whether the Colony’s resources are available for the benefit of the Claimants as beneficiaries, we need not address the related question of whether the Colony owes a legal duty of support to its members.
ISSUES
¶2 The parties present multiple issues on appeal and cross-appeal. However, we have determined the dispositive issues to be:
¶3 1. Did the District Court err when it concluded that an express trust does not exist between KCR and the members of the King Hutterite Colony (“Colony members”)?
¶4 2. Are Claimants entitled to participate in the Family-Related Medicaid Program?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 Claimants are members of KCR, a Hutterite Colony located near Lewistown. Claimants had been participants in a particular Medicaid program, called the Family-Related Medicaid Program, since about 1991. To be eligible for this program, applicants must meet two “tests”-an “income test,” and a “resource test.” Under the income test, an applicant cannot have income exceeding $3,000 per year. The parties agree that Claimants have income of less than $3,000 per year and thus the income test is not an issue in this case. Under the resource test, an applicant cannot have resources which are determined to be both “countable” and “available” which exceed $3,000 in value.
¶6 A few years after Claimants began receiving Medicaid benefits, DPHHS scrutinized Claimants’ resources and income to determine if Claimants had been correctly deemed eligible for Medicaid. After reviewing KCR’s organizational documents, DPHHS concluded that a trust relationship exists between KCR and the Colony members, including Claimants. Additionally, DPHHS determined that one hundred percent of the net worth of KCR-which totals approximately $2.1 million-is available to each individual Colony member. On December 17, 2001, DPHHS notified Claimants that their Medicaid benefits were being terminated because the resources available to each of them exceeded the allowable resource limit of $3,000.
¶7 Claimants requested a Fair Hearing before the Board of Public Assistance (“BPA”). A BPA Hearings Officer presided over a four-day hearing during the summer of 2002. On January 16, 2003, the Hearings Officer, filed a Fair Hearing Decision in which he concluded, *374 based on the Colony’s Articles of Incorporation and upon the testimony of the Claimants regarding the care provided to them by the Colony, that a trust relationship existed between KCR and the Colony members with KCR as the Trustee and the members of the Colony as beneficiaries, and that KCR is legally obligated to support the Colony members. The Hearings Officer further concluded that the assets of KCR were available to each individual Colony member on a pro rata basis.
¶8 Finally, the Hearings Officer addressed the question of whether the Claimants were entitled to the benefit of any resource exclusions, pursuant to Rule 37.78.401, ARM, when considering what resources should be counted against them for eligibility purposes. The Officer rejected the Department’s contention that no exclusions could apply in trust situations, concluding that a reasonable pro rata analysis of the countable resources held in the common treasury needed to be conducted so as to determine the Claimants’ eligibility for Medicaid. The Hearings Officer accordingly reversed the closure of Medicaid to the Claimants and ordered remand for resource determinations in accordance with its Decision.
¶9 DPHHS and Claimants both appealed portions of the Fair Hearing Decision to the full BPA. On June 3, 2003, the BPA affirmed the Hearings Officer’s findings, and some of his legal conclusions. Although the BPA agreed that a trust exists between KCR and the Colony members, it reversed the conclusion that KCR’s assets were available to individual Colony members and that each Colony member has access to a pro rata share of KCR’s assets. It did not reach the issue of whether any of KCR’s assets would be excludable pursuant to Rule 37.78.401, ARM.
¶10 DPHHS and Claimants both sought judicial review of this decision in the District Court. DPHHS challenged the BPA’s conclusion that KCR’s assets were not available to the Colony members and the conclusion that these resources, if available, would be allocated to each Colony member on a pro rata basis. Claimants appealed the conclusion that a trust relationship exists between themselves and KCR, and further challenged the conclusion that KCR owes the Colony members a legal duty of support.
¶11 The District Court did not find the same language in KCR’s organizational documents to be pertinent to its decision as did the Hearings Officer and the BPA. It concluded that KCR’s assets were not available to individual Colony members, and furthermore, that a trust relationship between KCR and the Colony members does not exist. The District Court did not address the BPA’s conclusion that KCR has a *375 legal duty to support its members. From the District Court’s Memorandum and Order, filed March 10, 2004, both parties appeal.
STANDARD OF REVIEW
¶12 Actions brought before the BPA are subject to the requirements of the Montana Administrative Procedure Act (“MAPA”). Kirchner v. State, 2005 MT 202, ¶¶ 8-9, 328 Mont. 203, ¶¶ 8-9, 119 P.3d 82, ¶¶ 8-9. The standard of review of an agency decision under MAPA, set forth at § 2-4-704(2), MCA, provides in pertinent part:
The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
(a) the administrative findings, inferences, conclusions, or decisions are: ... (v) clearly erroneous in Anew of the reliable, probative, and substantial evidence on the whole record; [or] (vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. ...
¶13 A three-part test is used to determine whether agency findings are clearly erroneous: (1) the record is reviewed to determine if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, it Avill be determined whether the agency misapprehended the effect of the evidence; and (3) if substantial evidence exists and the effect of the evidence has not been misapprehended, the reviewing court may still decide that a finding is clearly erroneous if a review of the record leaves the court \vith a definite and firm conAdction that a mistake has been made. Total Mechanical Heating v. UEF, 2002 MT 55, ¶ 22, 309 Mont. 84, ¶ 22, 50 P.3d 108, ¶ 22 (citation omitted).
¶14 An agency’s conclusions of law are reviewed to determine if they are correct. Matter of Kalfell Ranch, Inc. (1994), 269 Mont. 117, 122, 887 P.2d 241, 245. The foregoing standard of review is applicable to both the District Court’s reAdew of the administrative decision and our subsequent reAdew of the District Court’s decision. O’Neill v. Department of Revenue, 2002 MT 130, ¶ 10, 310 Mont. 148, ¶ 10, 49 P.3d 43, ¶ 10 (citations omitted).
DISCUSSION ISSUE ONE
¶15 Did the District Court err when it concluded that an express trust *376 does not exist between KCR and the Colony members?
¶16 DPHHS argues that the District Court erroneously disregarded the findings made at the administrative level and substituted its own findings in their place. DPHHS farther argues the District Court erred when it reversed the conclusion of the Hearings Officer, as affirmed by the BPA, that KCR holds its assets in trust for the benefit of the Colony members.
¶17 DPHHS argues that under the provisions of § 72-33-201, MCA, an express trust exists between KCR and the Colony members. Section 72-33-201(1), MCA, states that a trust may be created by a declaration of a property owner that the owner holds the property as trustee. Section 72-33-201(2), MCA, states that a trust may be created by a transfer of property by the owner during the owner’s lifetime to another person as trustee. DPHHS claims that in the case before us, while either would suffice, both subsections (1) and (2) have been satisfied. With regard to § 72-33-201(1), MCA, KCR’s Articles declare that one of KCR’s purposes is to accumulate trust funds and property for its members. Satisfying § 72-33-201(2), MCA, DPHHS argues, KCR’s Bylaws declare KCR holds all its property for the sole benefit of its members. In this connection, DPHHS asserts that Colony members have transferred property to KCR and KCR holds that property in trust for the benefit of the Colony members.
¶18 Claimants maintain the District Court correctly concluded as a matter of law that an express trust does not exist between KCR and the Colony members. Claimants dispute that a “transfer of property” which would satisfy the requirements of § 72-33-201(2), MCA, occurred. Relying upon McCormick v. Brevig, 1999 MT 86, ¶ 62, 294 Mont. 144, ¶ 62, 980 P.2d 603, ¶ 62, Claimants maintain that in order for a trust to be valid, there must have been an actual transfer of property, and there is no evidence that property was actually transferred to KCR either at the time of its creation or thereafter.
¶19 DPHHS disagrees. It asserts that KCR’s Bylaws declare that KCR holds its assets as a trustee, and these assets came to be owned by KCR because members of the pre-incorporated King Colony Ranch created the corporation and transferred the community’s property to it. Indeed, this transfer is undisputed. DPHHS also claims that Colony members make “transfers” to the corporation on an ongoing basis because they work for KCR without receiving wages and the products of that labor become revenue for KCR.
¶20 In the Fair Hearing Decision, the Hearings Officer found that KCR exists as a communal living arrangement where everyone shares his or her productivity and no one individually owns any property. The *377 Hearings Officer further found that all property is held in the name of the corporation and that the financial needs of the Colony members are met out of the community purse. Thus, a trust exists.
¶21 Disagreeing with the findings of the Hearings Officer, the District Court maintained that only a single passage from the Articles bears any relevance to the issue. The District Court explained:
One of the purposes for which the Colony was incorporated, as stated in its articles of incorporation, is to “support the Church and the members thereof and all of their dependents and to accumulate and create trust funds and property for their dependents and successors....” This is the only language in the Colony’s articles of incorporation and by-laws that could possibly be interpreted as establishing an express trust. However, the language is not a manifestation of a present intention to create a trust. At most, the language indicates 8m intention to do something in the future. An intent to create a trust in the future is not sufficient to presently establish a trust. Therefore, the Court concludes that the organizing documents of the corporation do not create an express trust. (Emphasis added.)
We cannot agree with the course taken by the District Court on this issue. In reviewing an agency decision, a court is not free to ignore the findings made at the administrative level. Our standard is not whether there is evidence to support findings different from those made by the trier of fact, but whether substantial credible evidence supports the trier’s findings. Taylor v. State Compensation Ins. Fund (1996), 275 Mont. 432, 440, 913 P.2d 1242, 1246 (citations omitted). As long as substantial credible evidence exists to support the administrative findings, the reviewing court may not overturn them. Roeber v. State, Dept. of Institutions (1990), 243 Mont. 437, 440, 795 P.2d 424, 426 (citations omitted).
¶22 The Hearings Officer took account of several provisions of the Bylaws and the Articles to support its finding that a trust exists, which the District Court then erroneously disregarded. In addition to considering the clause from the Articles that the court examined, the Hearings Officer also found pertinent a statement in the Articles that KCR is “devoted exclusively to agricultural pursuits for the livelihood of its members,” and that KCR may engage in agricultural enterprises “for the benefit of this corporation and the mutual benefit of all the members.” The Hearings Officer further found pertinent passages in the Bylaws, including, “That all the property of the Corporation ... shall be held in the name of [KCR] for the sole benefit of the Members,” and “That no Member... shall have vested in them any real *378 or personal property, but the same shall be held forever [as property of KCR].” The BPA upheld these findings. These administrative findings were supported by substantial credible evidence. Thus, the District Court erred by entering findings to the contrary. Section 2-4-704(2), MCA.
¶23 Reinstating the findings as made by the Hearings Officer and affirmed by the BPA, we must next determine whether the District Court erred as a matter of law when it concluded that no express trust exists between KCR and the Colony members. In the Fair Hearing Decision, the Hearings Officer concluded a “trust relationship” exists between KCR and the Colony members. The BPA agreed.
¶24 Claimants contend that no property has ever actually been transferred to KCR from the Colony members and thus no trust may exist. However, though it is undisputed that the pre-incorporated King Colony Ranch transferred the community’s property to the KCR corporation, we need not reach this issue. As noted above, an express trust may be created by a declaration of a property owner that the owner holds the property as a trustee. Section 72-33-201(1), MCA. A trustee, as defined by § 72-33-108(7), MCA, means the person holding property in trust. Black’s Law Dictionary 1519 (7th ed. 1999), defines a trustee as one who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary.
¶25 We have held that a court may resolve church property disputes by applying neutral, secular principles of property, trust, and corporate law when the instruments upon which those principles operate are at hand. We further held that no First Amendment issue arises when a court resolves a church property dispute by relying on both state statutes concerning the holding of religious property, and the terms of corporate charters of religious organizations. Second Intern. Baha’i Council v. Chase, 2005 MT 30, ¶ 17, 326 Mont. 41, ¶ 17, 106 P.3d 1168, ¶ 17 (citation omitted) (“Chase”). It is undisputed that the organizational documents of KCR are the Articles and Bylaws, and that we may examine them applying neutral principles of law as we did in Chase.
¶26 Section VIII of the Bylaws states:
That all the property of the Corporation, both real and personal, shall be held in the name of King Colony Ranch for the sole benefit of the Members of the King Colony Ranch and for their natural heirs and successors. That no Member of the Kang Colony Ranch shall have vested in them any real or personal property, but the same shall be held foreever [sic] and perpetual as the Cooperative properties of the King Colony Ranch in accordance *379 with the ordinances of the Cooperative Hutterische Church Society and its Rituals and belief in the humility of man before his Maker and God.
¶27 Furthermore, the Constitution of the Hutterian Brethren Church and Rules As To Community of Property (“Hutterian Constitution”), which was admitted into evidence during the Fair Hearing, states:
36. No individual member of a Colony shall have any assignable or transferable interest in any of its property, real or personal.
37. All property, real and personal, of a Colony, from whomsoever, whensoever, and howsoever it may have been obtained, shall forever be owned, used, occupied, controlled and possessed by the Colony for the common use, interest, and benefit of each and all of the members thereof, for the purposes of such Colony.
¶28 The language found within the organizing documents of KCR is internally consistent and unambiguous. The intention of the Colony and the understanding of its members is that KCR’s assets are held in trust for the benefit of the members and their heirs. Language in the Articles, Bylaws, and Hutterian Constitution all support this conclusion. Although Claimants argue that there is insufficient evidence to support such a conclusion, they have given us no evidence which contradicts the language of KCR’s organizing documents or the Hutterian Constitution. Claimants furthermore do not dispute that this language is indeed followed in the practices of the Colony and its members. The party who asserts the existence of a trust has the burden of proving its existence and contents by clear, unmistakable, satisfactory and convincing evidence. McCormick, ¶ 56. DPHHS has met this burden, and Claimants have raised no serious challenges to the accuracy of the evidence upon which DPHHS relies. Thus, we conclude that the Hearings Officer’s conclusion that an express trust exists was correct.
¶29 The Colony as trustee has the duty to administer the Trust in the interest of its members as beneficiaries. Section 72-34-103(1), MCA; In re Estate of Bradshaw, 2001 MT 92, ¶ 39, 305 Mont. 178, ¶ 39, 24 P.3d 211, ¶ 39. Based upon the language of the internal documents noted above, as well as the testimony of the Claimants and other Colony witnesses, we conclude that the trust’s resources are available for the benefit of its members, including the Claimants.
ISSUE TWO
¶30 Are Claimants entitled to participate in the Family-Related Medicaid Program?
¶31 In structuring the Medicaid program, Congress chose to direct the *380 limited funds available to the most impoverished people. Ramey v. Reinertson (10th Cir. 2001), 268 F.3d 955, 958 (citation omitted). Eligibility for Medicaid is dependent upon a determination of whether an applicant has “available” resources, and coverage will be denied if an applicant’s resources exceed a statutory ceiling. Ramey, 268 F.3d at 958; 42 U.S.C. § 1396a(a)(10)(A)(i)(IV). Because some applicants attempted to shelter their assets by placing those assets into irrevocable trusts, the United States Congress passed legislation which restricts the ability of applicants to use trusts to shelter assets and gain Medicaid eligibility. Ramey, 268 F.3d at 958. See 42 U.S.C. § 1396a(k), now replaced by 42 U.S.C. § 1396p(d).
¶32 Within the federal Medicaid program, each participating state develops a plan containing reasonable standards for determining eligibility for medical assistance, and an individual becomes eligible for Medicaid if he or she meets the state’s criteria. Schweiker v. Gray Panthers (1981), 453 U.S. 34, 36-37, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460, 465; 42 U.S.C. § 1396a.
¶33 In its brief to this Court, DPHHS argues that per its regulations, Claimants are not entitled to participate in this particular Medicaid program. An individual is ineligible for this Medicaid program if DPHHS can ascribe to that individual $3,000 or more of “countable, available resources.” It is undisputed that KCR has assets totaling approximately $2.1 million net. However, whether this ascribes $3,000 or more to each of the Claimants in this case so as to render them ineligible for Medicaid rests upon two determinations: how much, if any, of that $2.1 million is a “countable” (as opposed to “excludable”) asset; and whether KCR’s countable assets are “available” to each Claimant at all, and if so, whether that availability should be in toto, pro rata, or in some other proportion. Unfortunately, neither of these determinations has yet been made.
¶34 The administrative and judicial review process has resulted in a mixed bag of unreconcilable findings. Because the District Court concluded that no trust exists, it did not reach the issue of whether Claimants would be eligible for Medicaid. Although the BPA concluded that a trust exists between KCR and Claimants, it reversed the Hearings Officer’s conclusion that KCR’s assets are available to Claimants, noting that a Colony member’s right to be supported does not give the Colony member a property interest in KCR’s assets. The BPA relied upon language in the Articles which state that no Colony member may hold any special property rights in KCR’s property; language in the Bylaws which states that no Colony member shall have vested in them any real or personal property; a superceded *381 DPHHS Memorandum; and the Federal Program Operations Manual System (“POMS”), which the Social Security Administration uses to process claims for Social Security benefits, and which the BPA concedes does not apply to Medicaid. Because the BPA concluded that none of KCR’s assets were available to Claimants, it did not consider whether any of KCR’s assets would be countable or excludable under the applicable regulations.
¶35 In the Fair Hearing Decision, the Hearings Officer concluded that Rule 37.78.401, ARM, specifically allows numerous exclusions from the resource accounting which DPHHS undertakes in determining the amount of resources available to a claimant, and that in the situation at hand, DPHHS failed to undertake this analysis and instead argued without citable authority that assets held in trust are automatically considered “countable” resources for the purposes of DPHHS’ resource determinations. The Hearings Officer concluded that a trust relationship does not preclude this analysis. See ¶ 8 herein. The Hearings Officer further concluded that because KCR’s income is divided into equal shares for tax purposes, it would stand to reason that the resources would likewise be divided and allocated on a pro rata basis.
¶36 Pursuant to § 53-6-113(1), MCA, DPHHS shall adopt appropriate rules necessary for the administration of the Montana Medicaid program that may be required by federal laws and regulations governing state participation in Medicaid. Pursuant to § 53-6-113(6), MCA, those rules may include, among other criteria, financial standards and criteria for income and resources and treatment of resources. DPHHS argues that under the administrative rules it has crafted, it must consider as “available” to an applicant the maximum amount distributable from a trust of which that applicant is a beneficiary. The pertinent language in the Medicaid Manual states, “If the trust is considered to be accessible, the value of all the resources held by the trust must be counted in determining the household’s/individual’s resource eligibility.” See Centers for Medicare and Medicaid Services, Federal Medicaid Agency, State Medicaid Manual, § 3215.3. In Claimants’ case, DPHHS argues, that amount is the full value of the trust because the trust’s organizing documents contain no limiting language.
¶37 A single sentence from DPHHS’ own manual is scant authority upon which to base an ultimate conclusion on an issue of such importance, and yet it is the only authority DPHHS offers. DPHHS argues that KCR could in its discretion spend the full amount of the trust’s assets to pay for the medical care of a single Colony member. *382 While DPHHS concedes that this approach may seem unsatisfactory, DPHHS maintains it is the approach mandated by the State’s application of the Federal government’s Medicaid regulations. DPHHS asserts that it requires families who apply for Medicaid to spend all their assets until the family’s countable resources total $3,000 or less; families cannot allocate resources separately for each family member. This is so, DPHHS maintains, even if the result is that a family is forced into bankruptcy, because the Medicaid rules simply do not permit a family to divide resources by the number of members. While pursuant to § 53-6-131(2), MCA, DPHHS may indeed establish income and resource limitations within the amounts permitted by federal law, here, we do not have members of a nuclear family. Rather, we are presented with multiple families within a community. DPHHS has failed to demonstrate that treating an entire community as if it were a nuclear family is consistent with the applicable federal provisions.
¶38 Throughout this litigation, DPHHS has staked its position almost entirely upon its interpretation of its own regulations. DPHHS administers the Montana Medicaid program and is statutorily required to follow the federal government’s mandates for administration of the state Medicaid program. Section 53-6-101(1), MCA. DPHHS does not provide us with any external authority to support its assertions that trust resources are automatically deemed countable resources, and that KCR’s assets are available in toto to each Colony member. We are simply unprepared to hold that these Claimants are ineligible for Medicaid based upon DPHHS’ assertions that it has correctly applied its regulations, and little else.
¶39 We are likewise reluctant to follow the BPA’s approach in declaring KCR’s assets unavailable based upon an outdated memorandum which is disclaimed by the administrative agency which authored it, and a federal manual which does not apply to the Medicaid program. However, we do not fault the courts at the administrative or district court levels for failing to provide us with the findings we require. The Medicaid program is complex, detailed, and in a constant state of evolution. The preliminary issues of legal duty and the existence of a trust-as well as other issues which we conclude are not relevant to the outcome of this case-have overshadowed the determinative issue. While all parties in this case have spent significant time and energy arguing details of peripheral importance, the central issue of whether Claimants are eligible for Medicaid remains unresolved. Based upon the record before us, we are unable to make a determination on this Issue and remand to the District Court for remand to the Hearings Officer for further fact-finding and *383 consideration of the applicable law.
¶40 Before concluding, we turn briefly to the Dissent. The dissenting justice posits-without supporting secular authority-that “separation (of government from religion) must take precedence over the application of neutral criteria,” and that “separation trumps neutrality if neutrality leads to a governmental interpretation of religious doctrine.” Dissent, ¶ 67. We respectfully disagree with this proposition.
¶41 As the Dissent notes in ¶ 66, the United States Supreme Court recently held that a government-funded voucher system which provided students with tuition aid to attend the school of their choice, whether public or private, was not constitutionally infirm because the program benefitted “a wide spectrum of individuals, defined only by financial need and residence in a particular school district.” Zelman v. Simmons-Harris (2002), 536 U.S. 639, 662, 122 S.Ct. 2460, 2473, 153 L.Ed.2d. 604, 623. Similarly, Medicaid benefits a wide spectrum of individuals, who qualify for its benefits based upon financial need and their residence in the state. The Medicaid program does not discriminate in favor of or against claimants or anyone else on the basis of their religious beliefs. Rather, the program quite properly — and neutrally-requires all who seek its benefits to meet the same income and resource tests. In the words of the Dissent, when the Department does this, it is acting “neutrally in the face of a citizen’s exercise of his or her religion.” Dissent, ¶ 66. This is as it should be.
¶42 The Dissent also maintains that while the Department was entitled to examine Claimants’ resources in the same manner as it would any other applicant’s, neither it nor any civil court can reach conclusions therefrom because the organizational documents of Claimants’ faith contain no severable secular language capable of discreet analysis. Again, we disagree. While certainly some of the language of the Articles and By-laws is religious in tone, much of the language is secular, incorporating bedrock legal terms and principles that have always been amenable to legal analysis. See, e.g., ¶ 26. The fact that legal concepts are incorporated into a document which also sets forth articles of faith should not completely shield the document from legal scrutiny. With all due respect, and without reference to these Claimants and this case, under the Dissent’s logic, any sector cult-could, with the aid of a clever draftsman, qualify its members for benefits while insulating them from any requirement for qualification. Given the dearth of Medicaid dollars and the multitude of deserving applicants competing for those dollars, we simply conclude that all who seek the same benefits should be subject to the same qualification analysis, irrespective of their faith or lack of it. This is the essence of *384 neutrality, and its principles are properly applied here. Though the Dissent faults us for not elevating separation over neutrality, we conclude we have properly — and evenly — applied both principles. As noted in Everson, it is the State’s obligation to extend government benefits to all citizens without regard to their religious beliefs. Everson v. Board of Education (1947), 330 U.S. 1, 16, 67 S.Ct. 504, 512, 91 L.Ed 711, 724. Separation does not demand that we elevate a group of persons to privileged status, above all other applicants, because of their religious beliefs.
CONCLUSION
¶43 For the above-stated reasons, we conclude that an express trust exists between the Colony and its Members, and that its resources are available for the benefit of its beneficiaries, including Claimants. We remand this matter to the District Court for remand to the Hearings Officer for a determination of whether Claimants are eligible for the Family-Related Medicaid Program. In this connection, the Hearings Officer shall make a factual and legal determination of whether Claimants satisfy the “resource test” (see ¶¶ 5 and 33 herein), to include a determination of what Colony resources are “countable,” (as opposed to “excludable”), and the extent to which the countable resources are available to each individual Claimant.
¶44 Reversed and remanded.
JUSTICES NELSON, WARNER and LEAPHART concur.