**FILED**

September 24 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0060

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 318

BLUE CROSS AND BLUE SHIELD
OF MONTANA, INC.,

              Petitioner and Appellant,

    v.

MONTANA STATE AUDITOR and
COMMISSIONER OF INSURANCE,

              Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 08-248
Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Michael F. McMahon; McMahon Law Firm, Helena, Montana

        For Appellee:

                James G. Hunt; Hunt Law Firm, Helena, Montana

                Jennifer Massman; Special Assistant Attorney General, Montana
                State Auditor's Office, Helena, Montana

                            Submitted on Briefs:  July 29, 2009

                                      Decided:  September 24, 2009

Filed:

                _____
                            Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Blue Cross and Blue Shield of Montana (BCBS) appeals from the December 18, 2008, Memorandum and Order on Petition for Judicial Review issued by the Montana First Judicial District Court, Lewis and Clark County. That Memorandum and Order affirmed the final decision of the Montana State Auditor and Commissioner of Insurance (Commissioner) that had disapproved the language in a number of insurance forms that BCBS had submitted for approval. We affirm.

¶2    BCBS presents a number of issues for review which we summarize as follows:

¶3    Issue One:    Whether the District Court correctly determined that the Commissioner had the authority to withdraw a prior approval of BCBS forms.

¶4    Issue Two:    Whether the District Court correctly determined that the Commissioner properly disapproved of BCBS forms.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5    BCBS is a licensed not for profit health service corporation in Montana. In 2001 BCBS submitted forms to the Commissioner for approval as required by § 33-1-501(1), MCA. Those forms contained coverage exclusions under which BCBS would not pay for health care costs of its injured beneficiaries if the beneficiaries received, or were entitled to receive, benefits from any automobile or premises liability policy. The Commissioner disapproved the forms containing the exclusions and BCBS requested an administrative hearing. The Commissioner appointed a hearing examiner and opened a contested case proceeding.

¶6 In March, 2002, the Commissioner and BCBS reached an agreement allowing BCBS to use exclusion language in its forms. The agreement was contained in correspondence between their attorneys; no formal settlement agreement was executed, no order was issued, and the administrative proceeding was not dismissed. Through 2006 the Commissioner approved BCBS forms containing the agreed-to exclusion language. In October and November, 2006, BCBS submitted 97 forms for approval. The Commissioner disapproved the forms in May, 2007 on the ground that the exclusion language conflicted with §§ 33-30-1101 and -1102, MCA, and "deceptively affect the risk purported to be assumed in the general coverage of the contract." BCBS requested a contested case hearing, which was conducted by a hearing examiner in July, 2007. In October, 2007, the hearing examiner issued Proposed Findings of Fact, Conclusions of Law and Order upholding the decision to disapprove the forms.

¶7 In March, 2008, John Morrison, Montana State Auditor and Commissioner of Insurance, issued an order adopting the hearing examiner's proposed decision. BCBS sought judicial review of the Commissioner's decision in the Montana First Judicial District Court. On December 18, 2008, Judge Tom Honzel issued a Memorandum and Order upholding the Commissioner's decision to disapprove the BCBS forms. This appeal was taken from that order.

¶8 The exclusions at issue provide that BCBS will not pay health care benefits to its beneficiaries for:

> Services, supplies, and medications provided to treat any injury to the extent the member receives, or would be entitled to receive where liability is reasonably clear, benefits under an automobile insurance policy.

3

Such benefits received by the member shall be used first to satisfy any remaining coinsurance, copayments and deductibles related to the injury for which claims are submitted to the plan. The injury related claims must be submitted to the plan to apply any applicable credit to coinsurance, copayments and/or deductibles.

Services, supplies, and medications provided to treat any injury to the extent the member receives, or would be entitled to receive where liability is reasonably clear, benefits from a premises liability policy. Examples of such policies are a homeowners or business liability policy. Such benefits received by the member shall be used first to satisfy any remaining coinsurance, copayments and deductibles related to the injury for which claims are submitted to the plan. The injury related claims must be submitted to the plan to apply any applicable credit to coinsurance, copayments and/or deductibles.

All forms that the Commissioner disapproved in 2007 contained this language.

## STANDARD OF REVIEW

¶9 This Court reviews a district court's decision on judicial review of an agency decision to determine whether the findings are clearly erroneous and whether the conclusions of law are correct. *O'Neil v. Department of Revenue*, 2002 MT 130, ¶ 10, 310 Mont. 148, 49 P.3d 43; *Hofer v. Dept. Public Health and Human Services*, 2005 MT 302, ¶¶ 13-14, 329 Mont. 368, 124 P.3d 1098.

## DISCUSSION

¶10 *Issue One: Whether the District Court correctly determined that the Commissioner had the authority to withdraw a prior approval of BCBS forms.* BCBS first contends that the Commissioner is bound by the 2002 agreement that approved the use of the exclusions at issue. It is undisputed that BCBS and the Commissioner did reach some kind of agreement in 2002 in the context of the contested case proceeding, and that BCBS employed the disputed exclusions for the next five years. BCBS contends

4

that the 2002 agreement precludes the Commissioner from making a determination in 2007 to prohibit future use of the exclusions.

¶11  Montana law prohibits use of any insurance form unless it is filed with and approved by the Commissioner. Section 33-1-501(1), MCA. This is the provision under which BCBS sought approval of its forms in 2001 and 2007. The statute further provides that the Commissioner "may at any time, after notice and for cause shown withdraw any approval." Section 33-1-501(4), MCA. The insurer may request a hearing "for unresolved disputes regarding disapproval or withdrawal of approval." Section 33-1-501(6), MCA. The Commissioner is required to disapprove any form or to withdraw any previous approval if the form is in violation of or does not comply with law, or if it contains any inconsistent, ambiguous or misleading terms that deceptively affect the risk purported to be assumed. Section 33-1-502, MCA. These statutory provisions requiring approval of forms and providing for the withdrawal of prior approvals were in effect at all the times relevant to this appeal.

¶12  Under §§ 33-1-501 and -502, MCA, the Commissioner's power and duty to withdraw previous form approval is clear. BCBS argues in effect that these statutes only allow withdrawal of approvals that were granted during the administrative process, and that the Commissioner has no power to withdraw an approval granted as the result of a contested case proceeding. The statutes do not make any such distinction. Section 33-1-501(4), MCA, provides that the Commissioner "may *at any time*, after notice and for cause shown, *withdraw any approval*." (Emphasis added.) The authority to withdraw "any approval" at "any time" is broad, and if the legislature had intended to except

5

approvals given during a contested case proceeding, it could have easily done so. There is no reason to go beyond the plain words of the statute and to impose the limitation urged by BCBS. *Friends of the Wild Swan v. Mont. Dept. Nat. Res. & Cons.*, 2005 MT 351, ¶ 13, 330 Mont. 186, 127 P.3d 394. Sections 33-1-501 and -502, MCA, do not prohibit the Commissioner from withdrawing previous form approvals agreed to during contested case proceedings.

¶13 The Commissioner has broad statutory power over the content of insurance documents, and the statutes require that this power be exercised to protect the insured public and to further the goals of Montana's laws on insurance. Section 33-1-311, MCA. The position of BCBS here, and particularly its argument that the Commissioner waived any right to object to the exclusions by agreeing to them in 2002, would immortalize any provision of an insuring document approved in a similar manner. This would be true however onerous or deceptive the provision proved to be. The provision would survive even if there were statutory changes that caused it to conflict with express law. This would be contrary to public policy as expressed in the insurance codes in Title 33, MCA, and with the Commissioner's powers over insurers for the protection of the public. Application and enforcement of these statutes, enacted for the public benefit, cannot be waived. *Collection Bureau Services v. Morrow*, 2004 MT 84, ¶ 10, 320 Mont. 478, 87 P.3d 1024.

¶14 The Commissioner was not barred by res judicata arising from the 2001 proceeding from withdrawing the previous approval of the exclusion language. Assuming, for purposes of this issue, that administrative res judicata could prohibit the

Commissioner from withdrawing a prior form approval, that doctrine is not applicable to the 2001 proceeding. That administrative proceeding produced no decision, decree or order of any kind. It is undisputed that the Commissioner and BCBS did not execute an actual settlement document; that there was no order approving a settlement or incorporating the provisions of a settlement; and that the contested case proceeding was never closed. Res judicata does not apply. *Olson v. Daugenbraugh*, 2001 MT 284, ¶ 22, 307 Mont. 371, 38 P.3d 154.

¶15    BCBS also asserts that the Commissioner abused his discretion by adopting a number of conclusions of law adopted by the hearing examiner. We will not consider these issues because the decision of the hearing examiner is not part of the record on appeal and the specific conclusions or findings referred to do not appear in the record in any recognizable form. *See* M .R. App. P. 8(2).

¶16    *Issue Two: Whether the District Court correctly determined that the Commissioner properly disapproved of the BCBS forms*. Since the Commissioner had the power to withdraw the previous approval of the BCBS exclusion provisions, the next issue is whether there were sufficient grounds to do so under § 33-1-502, MCA. The parties devote substantial argument to the issue of whether the BCBS exclusions represent attempts to exercise subrogation contrary to law. If the provisions do constitute impermissible subrogation by BCBS, then the Commissioner properly rejected them under § 33-1-502(1), MCA.

7

¶17 The District Court held that the BCBS exclusions were subject to disapproval under § 33-1-502(1), MCA, because they violated Montana law on subrogation, as set out in §§ 33-30-1101 and -1102, MCA. Section 33-30-1101, MCA, provides:

> A hospital or medical service plan contract issued by a health service corporation may contain a provision providing that, to the extent necessary for reimbursement of benefits paid to or on behalf of the insured, the health service corporation is entitled to subrogation, as provided in 33-30-1102, against a judgment or recovery received by the insured from a third party found liable for a wrongful act or omission that caused the injury necessitating benefit payments.

Section 33-30-1102, MCA, provides that a health service corporation's right of subrogation "may not be enforced until the injured insured has been fully compensated for his injuries." The District Court agreed with the Commissioner's determination that the BCBS exclusions allowed it to exclude, limit or offset health insurance benefits otherwise due to the insured before the insured was fully compensated for his injuries.

¶18 Subrogation is an equitable doctrine designed to compel the ultimate payment of an obligation by the person "who in justice, equity and good conscience should pay it." *Skauge v. Mountain States T. & T.*, 172 Mont. 521, 524, 565 P.2d 628, 630 (1977). Montana public policy requires that an insured must be totally reimbursed for all losses including costs and attorney fees incurred in recovering those losses, before the insurer can exercise any right of subrogation, whatever an insurance policy may provide to the contrary. *Swanson v. Hartford Ins. Co.*, 2002 MT 81, ¶ 28, 309 Mont. 269, 46 P.3d 584; *Oberson v. Federated Mutual Ins. Co.*, 2005 MT 329, ¶¶ 14-15, 330 Mont. 1, 126 P.3d 459.

8

¶19 The BCBS exclusions effectively allow it to exercise subrogation before paying anything to its insured, contrary to § 33-30-1101, MCA, which allows reimbursement "for benefits paid." The exclusions allow BCBS to avoid any payment of benefits to its insured if the insured is "entitled to receive" benefits from any other auto or premises liability policy, whether or not the insured actually receives any of those benefits, and whether or not the insured has been made whole. Only when the insured is made whole as defined in Montana law, and then only after BCBS has paid out benefits to its insured, could BCBS be e ntitled to claim subrogation. It is contrary to Montana law for BCBS to enjoy the benefits of subrogation in the circumstances allowed by the disputed exclusions. The BCBS exclusions therefore violate Montana statutory and case law on subrogation.

¶20 The Commissioner was within his statutory power and duty to disapprove the BCBS exclusions. The disapproval was warranted under § 33-1-502(1), MCA, because the provisions were in violation of, or do not comply with the insurance code. The District Court therefore properly upheld the Commissioner's decision and we affirm.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER

9

Justice Jim Rice, dissenting.

¶21 "[A]n exclusion is not synonymous with the concept of subrogation . . . ." *St. Farm Mut. Automobile Ins. Co. v. Walker*, 505 S.E.2d 828, 830 (Ga. App. 1998).

¶22 Although I concur with the Court's determination under the first issue that the Commissioner possessed the authority to withdraw a prior approval of the Blue Cross and Blue Shield (BCBS) policy forms, I dissent from the Court's resolution of the second issue because it fails to recognize the distinction between subrogation and insurance exclusions.

¶23 This Court has previously acknowledged that it has confused subrogation with distinctly different concepts. In *Youngblood v. Am. Sts. Ins. Co.*, 262 Mont. 391, 866 P.2d 203 (1993), for example, the Court recognized its past failure to distinguish between subrogation and assignment. We stated:

> The "blurring" of the distinction between an assignment and subrogation, in our decisions in *Reitler* and *Christenson*, and the misapplication of those concepts in those cases, was unfortunate. There is a definite, legal distinction between the two doctrines, and, in *Reitler* and *Christenson*, we erred in reasoning otherwise.

*Youngblood*, 262 Mont. at 398, 866 P.2d at 207. Of course, merely because we have failed to properly apply subrogation concepts in the past does not mean we have failed to do so in this case, but our past confusion provides an appropriate backdrop here, as the Court has again confused the concept.

¶24 We have explained that subrogation stems from the Latin root "subrogare," which means "to pray under or through." *Swanson v. Champion Intern. Corp.*, 197 Mont. 509, 519, 646 P.2d 1166, 1171 (1982). Although the Court offers the cursory definition of subrogation as "an equitable doctrine designed to compel the ultimate payment of an

10

obligation by the person 'who in justice, equity and good conscience should pay it,'" Opinion, ¶ 18 (quoting *Skauge v. Mt. Sts. Tel. & Telegraph Co.*, 172 Mont. 521, 524, 565 P.2d 628, 630 (1977)), subrogation involves more than this "do good" objective. Subrogation is a substitutionary legal action, whereby one party acquires the legal rights of another in exchange for assuming that person's risk of loss. In the insurance context, it occurs "so that the [insurer] will succeed to the rights of the [insured] in relation to the debt or claim . . . ." *Youngblood*, 262 Mont. at 395, 866 P.2d at 205. A key component to subrogation is consideration—the insured pays a premium in exchange for the insurer's assumption of his risk of loss. *Thayer v. Uninsured Employers' Fund*, 1999 MT 304, ¶ 21, 297 Mont. 179, 991 P.2d 447.

¶25  On the other hand, exclusions are "insurance-policy provision[s] that except[] certain events or conditions from coverage." *Black's Law Dictionary* 605 (Bryan A. Garner ed., 8th ed., West 2004). We have held that exclusions "will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 350 Mont. 184, 198, 206 P.3d 919, 929 (quoting *Wellcome v. Home Ins. Co.*, 257 Mont. 354, 356-57, 849 P.2d 190, 192 (1993)). However, despite the narrow interpretation given to exclusions, under no circumstances should the Court "seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Newbury v. St. Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 2008 MT 156, ¶ 35, 343 Mont. 279, 184 P.3d 1021 (quoting

11

*Mont. Petroleum Tank Release Compen. Bd. v. Crumley's, Inc.*, 2008 MT 2, ¶ 35, 341 Mont. 33, 174 P.3d 948).

¶26 To delineate the difference between subrogation and exclusions in this case, it is necessary to start with the applicable exclusionary language in the BCBS policy. Although the Court includes a portion of this language, it does not include the prefatory language to the exclusions. Opinion, ¶ 8. The complete language is as follows:

> *EXCLUSIONS AND LIMITATIONS*
>
> *All Benefits provided under this Contract are subject to the Exclusions and Limitations in this section and as stated under the Benefit Section. Except as otherwise provided in this Contract, The Plan will not pay for . . .*
>
> 3.      Services, supplies, and medications provided to treat any injury to the extent the Member receives, or would be entitled to receive where liability is reasonably clear, benefits under an automobile insurance policy. Such benefits received by the Member shall be used first to satisfy any remaining Coinsurance, Copayments and Deductibles related to the injury for which claims are submitted to The Plan. The injury related claims must be submitted to The Plan to apply any applicable credit to Coinsurance, Copayments and/or Deductibles.
>
> 4.      Services, supplies, and medications provided to treat any injury to the extent the Member receives, or would be entitled to receive where liability is reasonably clear, benefits from a premises liability policy. Examples of such policies are a homeowners or business liability policy. Such benefits received by the Member shall be used first to satisfy any remaining Coinsurance, Copayments, and Deductibles related to the injury for which claims are submitted to The Plan. The injury related claims must be submitted to The Plan to apply any applicable credit to Coinsurance, Copayments and/or Deductibles.

(Emphasis added.)

¶27 Nowhere within these exclusions does the word "subrogation" appear, which is why the Commissioner argues that the policy embodies "de facto subrogation." However, more importantly, these provisions do not even include the *concept* of

12

subrogation. Despite the Commissioner's effort to transform the exclusions into de facto subrogation by an "if it looks like a duck" analogy, subrogation arises only when there is a "substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Thayer*, ¶ 17 (quoting *Black's Law Dictionary* 1440 (Bryan A. Garner ed., 7th ed., West 1999)). Here, subrogation never occurs because BCBS lacks any authority to substitute itself for the insured. BCBS has merely used the freedom of contract to exclude any coverage and thereby refuse to assume a risk. The provisions are clear and unambiguous: under the proposed policy, BCBS would be contracting with a customer for a single recovery, and basing the customer's premium thereon. I find it disturbing that the Court, despite its own warning, recently expressed, has acted with "violent hands . . . to include a risk clearly excluded by the insurance contract" and for which BCBS would receive no payment. *Newbury*, ¶ 35 (quoting *Crumley's*, ¶ 35).

¶28 Although this Court has not specifically addressed the distinction between subrogation and exclusions, other courts have done so. Georgia law is similar to Montana law, particularly with respect to Georgia's "complete compensation rule" limiting the application of subrogation and reimbursement provisions, which is similar to Montana's "made whole" rule. *Walker*, 505 S.E.2d at 830; *see also Duncan v. Integon Gen. Ins. Corp.*, 482 S.E.2d 325 (Ga. 1997).

¶29 In *Walker*, 505 S.E.2d at 829, Demarcus Walker injured himself in an automobile accident, sustaining medical expenses amounting to $10,671.29. The State Farm policy covering Walker provided the following exclusion:

13

> If the injured person has been paid damages for the bodily injury by or on behalf of the liable party in an amount . . . equal to or greater than the total reasonable and necessary medical expenses incurred by the injured person, *we owe nothing* under this coverage.

*Walker*, 505 S.E.2d at 830 (emphasis added). Because Walker settled with Southern General Insurance for $15,000.00, State Farm denied coverage. *Walker*, 505 S.E.2d at 829-30.

¶30 State Farm argued that the coverage exclusion, and not subrogation, relieved it of an obligation to pay Walker. *Walker*, 505 S.E.2d at 830. Walker argued application of the "complete compensation rule." *Walker*, 505 S.E.2d at 830. The court stated:

> *We agree with State Farm that an exclusion is not synonymous with the concept of subrogation*; the exclusion in this case defines or limits the circumstances under which an insurer must provide coverage, while the right of reimbursement is dependent on the existence of coverage and arises only if State Farm pays medical expenses under its coverage.

*Walker*, 505 S.E.2d at 830 (emphasis added). The Georgia court's logic is convincing, especially in light of the distinction between subrogation and exclusion already accommodated in Montana law.

¶31 The next question is whether the exclusions in the BCBS policy violate Montana's public policy. Under our law, insurance contracts may include exclusions "without violating public policy if the exclusion applies to optional, rather than mandatory, coverage." *Newbury*, ¶ 36 (citing *Stutzman v. Safeco Ins. Co. of Am.*, 284 Mont. 372, 380-81, 945 P.2d 32, 37 (1997)). For example, Montana law mandates coverage for "bodily injury of $25,000.00 per person and $50,000.00 per accident, and a liability limit of $10,000.00 for injury to or destruction of property." *Newbury*, ¶ 36 (citing §§ 61-6-103(2), 301(1), MCA). Medical payments coverage, however, is optional. *Newbury*, ¶ 36. The same is true of the health insurance BCBS offers; it is optional coverage under

14

Montana law. Consequently, the inclusion of medical payments coverage "in an insurance contract is at the sole discretion of the parties to the contract." *Newbury*, ¶ 36. BCBS has exercised its discretion and right to contract in crafting the policy.

¶32 Notwithstanding the line *Newbury* drew between mandatory and optional coverage, the Commissioner attempts to distinguish *Newbury* from the case *sub judice* in two ways. First, the Commissioner argues *Newbury* only analyzed medical expenses, but BCBS seeks to "subrogate against" much more than medical expenses. Second, the Commissioner argues the health care subrogation statutes are unlike the statutes analyzed under *Newbury*. However, the Commissioner's arguments are unconvincing.

¶33 In *Newbury*, Gerald Newbury, an employee of Montana Highway Maintenance Department, stopped plowing a highway to aid a vehicle in the ditch. *Newbury*, ¶ 7. As Newbury approached the vehicle, the driver fled the scene, striking Newbury with the door of her car. *Newbury*, ¶ 7. Newbury sustained injuries on the left side of his body, which totaled $18,405.80 in medical expenses. *Newbury*, ¶¶ 7-8. As a result of the injury, Newbury received $17,230.00 in medical expenses from the State Workers' Compensation Insurance Fund (State Fund). *Newbury*, ¶ 8. Newbury also filed a claim with his two automobile insurance policies, which provided medical payment of $5,000.00 per policy (for a total of $10,000.00) if struck as a pedestrian by a motor vehicle. *Newbury*, ¶¶ 9-10. State Farm paid $1,175.80 in order to cover Newbury's medical expenses beyond the $17,230.00 provided by State Fund and up to $18,405.80. *Newbury*, ¶ 10. State Farm refused to pay the full $10,000.00 under the two policies because each policy stated "there is no coverage 'to the extent workers' compensation

benefits are required to be payable.'" *Newbury*, ¶ 9. The Court stated State Farm's exclusion did not violate public policy because it excluded optional coverage rather than mandatory coverage. *Newbury*, ¶ 36.

¶34 The Commissioner's arguments for distinguishing *Newbury* necessarily presume BCBS is in fact engaging in subrogation. Under a proper understanding of subrogation, as articulated above, BCBS is not seeking a right of subrogation. It is of no moment that in *Newbury* State Farm excluded coverage when workers compensation applied and BCBS now seeks to exclude coverage when automobile insurance or premises liability insurance applies. The ability to exclude within the BCBS policy remains equally as valid as when it was done by State Farm in *Newbury*.

¶35 I would reverse the District Court.

/S/ JIM RICE